UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA GARYBO, et al.,<br><br>Plaintiff,<br><br>v.<br><br>LEONARDO BROS.,<br><br>Defendant. | No. 1:15-cv-01487-DAD-JLT<br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION<br><br>(Doc. No. 59) |

This matter is before the court on the motion for class certification filed on behalf of plaintiffs Sandra Garybo and Agustin Vega ("plaintiffs"). (Doc. No. 59.) Plaintiffs also seek to be appointed as class representatives and to appoint the attorneys of the firms Mallison & Martinez and Martinez, Aguilasocho & Lynch, APLC as co-class counsel. (*Id.*) Defendant Leonardo Bros. did not file an opposition to plaintiffs' motion and, accordingly, plaintiffs filed a statement of non-opposition on October 3, 2018, requesting that the court grant their motion without a hearing. (Doc. No. 61.)

Nonetheless, the court held a hearing on the motion on October 16, 2018. At the hearing, attorneys Stanley Mallison and Hector Martinez appeared on behalf of plaintiffs and the prospective class. No appearance was made on behalf of defendant Leonardo Bros. Having considered the parties' briefing, and having heard from counsel, the court will grant plaintiffs'
/////

motion for class certification, appoint plaintiffs as class representatives, and appoint plaintiffs' counsel as co-class counsel.

**BACKGROUND**

Plaintiffs filed their complaint initiating this action on September 30, 2015. (Doc. No. 1.) According to plaintiffs, Golden West Labor and Leonardo Bros. were joint employers of plaintiffs and the prospective class. (*Id.* at ¶ 19.) The complaint asserts the following causes of action: (1) violation of the Agricultural Workers Protection Act, 29 U.S.C. § 1801, *et seq.*; (2) failure to pay minimum wage under California Labor Code §§ 510, 1194, 1194.2, 1197 and Wage Orders 8, 13, 14; (3) failure to pay overtime wages under California Labor Code §§ 510, 1194, 1194.2, and Wage Orders 8, 13, 14; (4) failure to provide timely and complete rest periods or pay additional wages in lieu thereof under California Labor Code §§ 226.7, 512 and Wage Orders 8, 13, 14; (5) failure to timely pay wages due at resignation or termination under California Labor Code §§ 201, 202, 203; (6) knowing and intentional failure to comply with itemized employee wage statement provisions under California Labor Code §§ 226(B), 1174, 1175; (7) violation of Unfair Competition Law under California Business and Professions Code §§ 17200, *et seq.*; and (8) violation of the Private Attorneys General Act under California Labor Code §§ 2698, *et seq.* (*Id.* at ¶¶ 44–113.)

Golden West Labor, which was originally a defendant in this action, filed its answer on March 3, 2016. (Doc. No. 16.) Through discovery plaintiffs reportedly received "a substantial amount of class member payroll data in electronic form as well as policy and practice materials" from Golden West Labor. (Doc. No. 40 at 3.) On February 16, 2018, plaintiffs and Golden West Labor notified the court that they had reached a settlement agreement. (Doc. No. 49.) On March 30, 2018, the parties stipulated to the dismissal of all causes of action brought against Golden West Labor. (Doc. No. 52.) In light of the parties' stipulated dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), on April 4, 2018, the assigned magistrate judge directed the Clerk of the Court to close this action as to Golden West Labor only. (Doc. No. 54.)

Defendant Leonardo Bros. was served with the complaint but did not file an answer. (Doc. No. 59-1 at 1.) Accordingly, on March 28, 2016, plaintiffs requested a Clerk's entry of

1  default against Leonardo Bros., which the Clerk of the Court entered on March 29, 2016. (Doc.
2  Nos. 21, 22.) On July 27, 2018, plaintiffs moved for default judgment against Leonardo Bros. for
3  class-wide damages. (Doc. No. 56.) On August 9, 2018, however, the assigned magistrate judge
4  dropped plaintiffs' motion for default judgment from the calendar and directed plaintiffs to file a
5  separate motion for class certification before seeking default judgment on a class-wide basis
6  against Leonardo Bros. (*Id.*) On August 30, 2018, plaintiffs filed the pending motion seeking
7  class certification of an unpaid rest break class, appointment of class representatives, and
8  appointment of class counsel. (Doc. No. 59.)

Plaintiffs allege that they and the putative class members are non-exempt agricultural employees who worked on lands owned, leased, and/or operated by Golden West Labor and Leonardo Bros. in and around Fresno County who performed agricultural work, including picking and packing grapes, and were compensated based on agreed-upon piece-rates that varied over the period of their employment. (Doc. No. 1 at ¶¶ 13–14; *see* Doc Nos. 59-15 at ¶ 2; 59-16 at ¶ 2.) Although the putative class members were compensated based on a piece-rate formula, they were not paid a separate wage to compensate them for rest breaks. (Doc. No. 59-1 at 2.)

Plaintiffs now seek certification of a class related to the alleged rest break violations under state labor law and described as follows:

> **Unpaid Rest Break Class**[1]: All non-exempt farmworkers jointly employed by Golden West Labor and Leonardo Bros. who earned a

---

[1] This proposed class definition differs from that pled in plaintiffs' complaint, where plaintiffs defined the class as:

> All persons who are or have been employed or jointly employed by DEFENDANTS or DOES in the State of California at any time within four (4) years of the filing of the Initial Complaint in this action.

(Doc. No. 1 at 8.) At the hearing on the pending motion, plaintiffs' counsel clarified that the class was redefined and narrowed based on the limited payroll records obtained from Golden West Labor. Because the narrower class definition does not prejudice Leonardo Bros. and still includes individuals who were allegedly employed by defendant, the court will address the requirements for class certification of the Unpaid Rest Break Class as defined in the motion now before the court. *See Abdeljalil v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303, 306 (S.D. Cal. 2015) (where no prejudice to defendant results, a redefined class is permitted without an amendment when it "is simply a narrower version of the class definition presented in the [complaint]").

> piece-rate during the 2015 harvest season and worked at least one shift greater than 3.5 hours but did not receive a paid rest break.

(Doc. No. 59-1 at 2.) Plaintiffs allege that this class satisfies the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3).

As noted, Leonardo Bros. did not oppose plaintiffs' the motion for class certification. However, regardless of whether the parties contest an element of certification, the court has an independent duty to ensure that class certification is appropriate in a given case. *See In re Nat'l W. Life Ins. Deferred Annuities Litig.*, 268 F.R.D. 652, 660 (S.D. Cal. 2010). Therefore, below the court will examine each of the relevant prerequisites to certification.

## CLASS CERTIFICATION

The class action is a procedural mechanism whereby the "usual rule that litigation be conducted by and on behalf of the named parties only" is swept aside so that multiple parties— unwieldy in number but possessing similar or identical claims—may pursue common redress in an efficient and economical manner. *Comcast v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011)); *see also Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 963–64 (9th Cir. 2013). Federal Rule of Civil Procedure 23 controls class certification and imposes a two-step process in deciding whether a class may be certified.

### A. Rule 23(a) Requirements

At the first step of that process, Rule 23(a) requires the moving party to demonstrate the existence of four prerequisites in order for the court to consider whether certification is proper. These prerequisites are often described as: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. If—and only if—a putative class satisfies these four requirements may it then proceed to show it also satisfies one of the three subsections of Rule 23(b). The party seeking class certification bears the burden of establishing conformity with these requirements, and must do so by producing facts "affirmatively demonstrat[ing]" that certification is warranted. *Comcast*, 569 U.S. at 33; *Dukes*, 564 U.S. at 350. A court must review the merits of a party's substantive claim to the extent that they overlap with issues touching on class certification. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (citing *Dukes*, 564 U.S. at 350–51

4

and *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992)); *see also Blair v. The CBE Grp., Inc.*, 309 F.R.D. 621, 625 (S.D. Cal. 2015). Only after it has conducted a "rigorous analysis" of these facts and determined they show "actual, [and] not presumed, conformance" with Rule 23(a) and (b), may a district court certify a class. *Ellis*, 657 F.3d at 981 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160, 161, (1982)); *see also Comcast*, 569 U.S. at 33–34 (extending the "rigorous analysis" requirement to Rule 23(b)); *Patel v. Nike Retail Servs., Inc.*, Case No. 14-cv-4781-RS, 2016 WL 1241777, at *3 (N.D. Cal. Mar. 29, 2016) ("This 'rigorous' analysis applies both to Rule 23(a) and Rule 23(b)."). If a court does decide to certify a class, it must define the class claims and issues and appoint class counsel. Fed. R. Civ. P. 23(c)(1), (g).

In order for a class member to sue as a representative of all class members, the class member must establish the following prerequisites: (1) the class must be "so numerous that joinder of all members is impracticable"; (2) there must be "questions of law or fact common to the class"; (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (4) "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

As explained below, consideration of each of these requirements in the context of this action supports class certification.

### 1. Numerosity

A proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While there is no strict number requirement for numerosity, courts have routinely held that classes comprised of more than forty members will satisfy this prerequisite. *See Dunakin v. Quigley*, 99 F. Supp. 3d 1297, 1327 (W.D. Wash. 2015) ("Generally, 40 or more members will satisfy the numerosity requirement.") (quoting *Garrison v. Asotin County*, 251 F.R.D. 566, 569 (E.D. Wash. 2008); *McMillon v. Hawaii*, 261 F.R.D. 536, 542 (D. Haw. 2009); *Ikonen v. Hartz Mt. Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) ("As a general rule, classes of 20 are too small, classes of 20–40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough.").

/////

Here, plaintiffs aver that eighty-three non-exempt agricultural workers did not receive separate compensation for rest breaks or rest break premiums from Leonardo Bros. after working at least one shift greater than 3.5 hours during the 2015 harvest season. (Doc. No. 59-1 at 4.) This number is sufficient to satisfy Rule 23's numerosity requirement. *See, e.g.*, *Collins v. Cargill Meat Sols. Corp.*, 274 F.R.D. 294, 300 (E.D. Cal. 2011) ("Courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members.").

### 2. Commonality

Rule 23 requires there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy Rule 23(a)'s commonality requirement, a class claim "must depend upon a common contention . . . of such a nature that it is capable of class[-]wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. As the Supreme Court further explained, this frequently necessitates an inquiry that "overlap[s] with the merits of plaintiff's underlying claim." *Id.* at 351.

California Labor Code § 226.7 and Industrial Welfare Commission (IWC) Wage Order No. 14-2001 (codified at 8 California Code of Regulations § 11140) together control the provision of rest breaks by employers to non-exempt agricultural employees, whether paid on a piece-rate or hourly basis. Labor Code § 226.7 serves as an enabling statute, mandating that employers provide breaks in a manner consistent with the wage orders, as well as other authorities. The wage order states the specific requirements to which an employer of agricultural workers must adhere:

> Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.

8 Cal. Code Regs. § 11140(12). California courts have held that this provision means that one

10-minute rest period is required for shifts between three and one-half and six hours in length, two 10-minute rest periods are required for shifts between six and ten hours, and three 10-minute rest periods for shifts between ten and fourteen hours. *See Alberts v. Aurora Behavioral Health Care*, 241 Cal. App. 4th 388, 400 (2015) (citing *Brinker Rest. Corp. v. San Diego Cty. Superior Court*, 53 Cal. 4th 1004 (2012)). Labor Code § 226.7 reiterates that rest breaks are to be counted as hours worked, and that rest breaks cannot result in a deduction of wages.

California law also requires piece-rate employees to be separately compensated for rest-break periods at an amount not less than the minimum wage. Lab. Code § 226.2; *Gonzalez v. Downtown LA Motors, LP*, 215 Cal. App. 4th 36, 44–45 (2013); *Bluford v. Safeway Stores, Inc.*, 216 Cal. App. 4th 864, 872 (2013). "[C]ompliance [with this requirement] cannot be determined by averaging hourly compensation." *Bluford*, 216 Cal. App. 4th at 872. Rather, "employees [must] be compensated at the minimum wage for each hour worked." *Gonzalez*, 215 Cal. App. 4th at 45 (citing *Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 323 (2005)). While the law compels employers to "authorize and permit" rest breaks, it does not mandate that employees take these breaks. 8 Cal. Code Regs. § 11140(12); Cal. Dep't of Indus. Rel., Division of Lab. Standards Enforcement, Opinion Letter (Jan. 28, 2002). Moreover, employers are not required to track rest periods. 8 Cal. Code Regs. § 11140(7)(A)(3); *see also Munoz v. Giumarra Vineyard Corp.*, No. 1:09-CV-0703 AWI JLT, 2015 WL 5350563, at *6 (E.D. Cal. Sept. 11, 2015); *In re Taco Bell Wage & Hour Actions*, No. 1:07-cv-1314 LJO DLB, 2012 WL 5932833, at *11 (E.D. Cal. Nov. 27, 2012) ("While meal beaks are required to be recorded on time cards and therefore provide a reliable record, California law does not require employers to record rest periods.").

Here, the proposed class is composed solely of non-exempt agricultural workers who were jointly employed by Golden West Labor and Leonard Bros. and earned wages on a piece-rate basis during the 2015 harvest season. (Doc. No. 59-1 at 2.) Expert analysis of the timekeeping and payroll data produced by Golden West Labor establishes that prospective class members, including the named plaintiffs, worked 305 piece-rate shifts that were 3.5 hours or greater with no separate compensation for rest breaks or rest break premiums. (Doc No. 59-3 at ¶ 23.) Thus, the proposed class is premised on the claim that Leonardo Bros. failed to provide workers with paid

rest periods for shifts greater than 3.5 hours. The common issue of whether Leonardo Bros. maintained an unlawful rest period policy of not authorizing paid rest periods for shifts greater than 3.5 hours is common to this class. *See Ontiveros v. Zamora*, No. 2:08-cv-567-WBS-DAD, 2014 WL 3057506, at *6 (E.D. Cal. July 7, 2014) ("Whether class members were subject to a policy of piece-work compensation, whether that policy was uniformly applied at [defendant-affiliated] dealerships, and whether that policy was unlawful are common questions of law and fact that satisfy Rule 23(a)(2).") (and cases cited therein). Commonality is therefore satisfied here.

### 3. Typicality

"[T]he claims or defenses of the representative parties [must be] typical of the claims and defenses of the class." Fed. R. Civ. P. 23(a)(3). They need not be clones; rather, all that is required is that the claims or defenses be "reasonably co-extensive." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (noting that this standard is a "permissive" one and requires only that the claims of the class representatives be "reasonably co-extensive with those of absent class members; they need not be substantially identical"). Typicality is satisfied if the representative's claims arise from the same course of conduct as the class claims and are based on the same legal theory. *See, e.g.*, *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (claims are typical where named plaintiffs have the same claims as other members of the class and are not subject to unique defenses). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon*, 976 F.2d at 508.

Here, plaintiffs worked as field workers at various fields and ranches for Leonardo Bros., picking and packing grapes on a piece-rate basis. (Doc. No. 59-15 at ¶ 2 ("Vega Decl."); Doc. No. 59-16 at ¶ 2 ("Garybo Decl.").) Plaintiffs have presented evidence that Leonardo Bros. had a practice of not permitting workers to take 10-minute rest breaks and that they were not separately compensated for the rest breaks that they did take. (Vega Decl. at ¶¶ 7–8; Garybo Decl. at ¶¶ 7– 8.) Expert analysis of the timekeeping and payroll data indicates that the named plaintiffs

8

collectively worked thirteen piece-rate shifts that were greater than 3.5 hours during the 2015 harvest season. (*See* Doc. No. 59-14.) Plaintiffs did not receive separate compensation for rest breaks or a rest break premium associated with the thirteen piece-rate shifts they worked. (*Id.*) Plaintiffs' claims are typical of the claims of the class which are based on Leonardo Bros.' failure to appropriately provide paid rest break periods in accordance with state law. *See Hanlon*, 150 F.3d at 1020 (holding that the standard is a "permissive" one and requires only that the claims of the class representatives be "reasonably co-extensive with those of absent class members; they need not be substantially identical"). Typicality is therefore satisfied here.

                4.        Adequacy of Representation

Plaintiffs seeking class certification must show that they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Ellis*, 657 F.3d at 985 (quoting *Hanlon*, 150 F.3d at 1020)); s*ee also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015). "An absence of material conflicts of interest between the named plaintiffs and their counsel with other class members is central to adequacy and, in turn, to due process for absent members of the class." *Rodriguez v. W. Publ'g Co.*, 563 F.3d 948, 959 (9th Cir. 2009) (citing *Hanlon*, 150 F.3d at 1020). Accordingly, "[c]lass certification will be inappropriate if fundamental conflicts of interest are determined to exist among the proposed class members." *Allied Orthopedic v. Tyco Healthcare Grp.*, 247 F.R.D. 156, 177 (C.D. Cal. 2007). Generally, the adequacy inquiry seeks to ensure that the class representative is "part of the class and [that he] possess[es] the same interest and injury as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997).

Here, plaintiffs assert that their claims are based on their personal experience and that they would competently testify in support of the allegations against Leonardo Bros. (Vega Decl. at ¶ 1; Garybo Decl. at ¶ 1.) Plaintiffs also have no known conflicts. (Doc. No. 59-1 at 9.) These representations are sufficient to meet the general criteria for serving as class plaintiffs. *Ellis*, 657

F.3d at 985.  Therefore, plaintiffs will be confirmed as the class representatives for the unpaid rest break class.

Plaintiffs' counsel, Mallison & Martinez and Martinez, Aguilasocho, and Lynch, APLC, entered into a co-counsel agreement to represent plaintiffs' with respect to their claims. (Doc. No. 59 at ¶ 11; Doc. No. 66 at ¶ 2.)  In his declaration, attorney Joseph D. Sutton sets out his and Mallison & Martinez's qualifications to serve as co-class counsel.  (*See* Doc. No. 59-2.)  In addition to attorney Sutton, Stan Mallison, Hector Martinez, Marco A. Palau, and Eric S. Trabucco are also attorneys at that firm.  (*Id.* at ¶ 4.)  Attorney Sutton notes that Mallison & Martinez has handled extensive class action wage and hour cases since 2005.  (*Id.* at ¶¶ 3, 7.)  Illustrating the firm's extensive success litigating class action wage and hour cases, attorney Sutton has listed nearly two dozen class actions the firm is currently litigating or has resolved.  (*Id.* at ¶ 7.)

In a separate declaration, attorney Mario Martinez expands on the qualifications of Martinez, Aguilasocho, and Lynch to serve as co-class counsel in this action.  (*See* Doc. No. 66.)  That firm's primary practice is labor and employment law, with a focus on representing Spanish-speaking farm workers.  (*Id.* at ¶ 10.)  The lawyers at the firm have substantial experience representing employees in collective actions to enforce statutory rights under both federal and state wage and hour laws.  (*Id.*)  Attorney Martinez also lists over a dozen notable class actions to reflect the firm's extensive experience and success in litigating class actions.  (*Id.* at ¶ 13.)

The declarations of plaintiffs' counsel establish that they have extensive experience in class action litigation.  (*See* Doc. No. 59-2 at ¶¶ 3–10; Doc. No. 66 at ¶¶ 8–14.)  Absent any demonstrated conflict of interest, and given the qualifications of class counsel, the court is satisfied that they will vigorously and adequately pursue representation of the class.  *Ellis*, 657 F.3d at 985.  The court will therefore find the firms of Mallison & Martinez and Martinez Aguilasocho & Lynch APLC to be appropriate co-class counsel.  Adequacy of representation is also satisfied in this case.

/////

/////

## A. Rule 23(b) Requirements

Once the prerequisites of Rule 23(a) are met, at the second step plaintiffs must satisfy at least one of Rule 23(b)'s provisions. Certification under Rule 23(b)(3) is permitted when "the questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is [deemed to be] superior to other available methods for fairly and efficiently adjudicating the controversy." *Dukes*, 564 U.S. at 362 (quoting Fed. R. Civ. P. 23(b)(3)); *see also Tyson Foods, Inc. v. Bouaphakeo*, ___U.S. ___, ____, 136 S. Ct. 1036, 1045 (2016) ("An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'") (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–97 (5th ed. 2012)). The test of Rule 23(b)(3) is "far more demanding" than that of Rule 23(a). *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (quoting *Amchem*, 521 U.S. at 623–24). Below, the court addresses those requirements.

### 1. Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," *Amchem*, 521 U.S. at 622, whereas the superiority requirement demands courts "assess the relative advantages of alternative procedures for handling the total controversy" in order to determine that "a class action is the 'superior' method of resolution." Fed. R. Civ. P. 23(b)(3) advisory comm. note; *see also Pointer v. Bank of Am. Nat'l Ass'n*, No. 2:14-cv-0525-KJM-CKD, 2016 WL 696582, at *8 (E.D. Cal. Feb. 22, 2016). While the predominance requirement is similar to the Rule 23(a)(2) commonality requirement, the standard is much higher at this stage of the analysis. *Dukes*, 564 U.S. at 359; *Amchem*, 521 U.S. at 624–25; *Hanlon*, 150 F.3d at 1022. Ultimately, "[t]he predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc.*, 136 S. Ct. at 1045 (quoting Newberg, § 4:49, at 195–96).

/////

Here, common issues predominate over individual ones within this unpaid rest breaks class. The unpaid rest break claim presented in this action stems from Leonardo Bros.' alleged uniform policy not to separately compensate piece-rate employees who worked shifts greater than 3.5 hours for paid rest periods. Plaintiffs' claim will therefore succeed or fail based on the ultimate determination of whether Leonardo Bros.' policy was lawful under California law. Although individual class members have worked varying numbers of piece-rate shifts and are therefore each entitled to a different damages award if they prevail, the payroll records as provided by Golden West Labor in discovery and as analyzed by plaintiffs' data expert will enable a determination of each class member's recovery without difficulty. (*See* Doc No. 59-14.) As such, the issue of damages can be resolved based on timekeeping and payroll records and can be conducted on a class-wide basis. The court concludes that class-wide issues predominate with respect to this class.

2. Superiority

Rule 23 provides that, aside from predominance, a court must find that a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The rule lists four factors pertinent to superiority, including class members' interests in individually controlling litigation, whether any litigation has already been filed by putative class members, the desirability of concentrating the litigation in a class action, and the "likely difficulties in managing a class action." *Id.* In this last regard, the Ninth Circuit has recognized a "well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns," but rather should look to "manageability as one component of the superiority inquiry." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017) (quoting *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 663 (7th Cir. 2015)).

Here, there is no contention or suggestion that class members would be interested in controlling their own litigation, nor has any party advised the court of other pending litigation filed by putative class members concerning the claim at issue. Concentrating this litigation in a class action would clearly be a more efficient use of judicial resources given that much of the same evidence will be involved in each claim. Accordingly, the court concludes that a class

action is a superior method for adjudicating this case and that the requirements of Rule 23(b) have been met.

## CONCLUSION

For the reasons stated above:

1. Plaintiff's motion for class certification (Doc. No. 59) is granted;

2. The following Unpaid Rest Break Class is certified pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3):

   **Unpaid Rest Break Class**: All non-exempt farmworkers jointly employed by Golden West Labor and Leonardo Bros. who were compensated on a piece-rate basis and worked at least one shift greater than 3.5 hours but did not receive a paid rest break from March 1, 2015 through October 31, 2015.[2]

3. Plaintiffs Sandra Garybo and Agustin Vega are appointed as class representatives;

4. Mallison & Martinez and Martinez, Aguilasocho & Lynch, APLC are appointed as co-class counsel; and

5. The matter is referred back to the assigned magistrate judge for further scheduling and other proceedings consistent with this order.

IT IS SO ORDERED.

Dated: __**May 30, 2019**__  _____
UNITED STATES DISTRICT JUDGE

---

[2] The court has modified the scope of the proposed class by including the specific date range for the class period as provided by plaintiffs' counsel. (*See* Doc. No. 66 at ¶ 7.)