**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SANDRA GARYBO and AUSTIN VEGA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>LEONARDO BROS.,<br><br>Defendant. | Case No.: 1:15-cv-01487 - DAD JLT<br><br>FINDINGS AND RECOMMENDATIONS GRANTING IN PART PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT<br>(Doc. 83) |

Sandra Garybo and Austin Vega were agricultural workers jointly employed by Leonardo Bros. and Golden West Labor in Fresno County. Plaintiffs contend the defendants are liable for violations of wage and hour labor laws and initiated this action on behalf of themselves and all other similarly situated. (Doc. 1) The Court certified a class of farmworkers and appointed Plaintiffs as the class representatives. (Doc. 67) Because Leonardo Bros. failed to respond to the allegations in the complaint, Plaintiffs seek default judgment against the company. (Doc. 83)

The Court finds the matter is suitable for decision without oral arguments, and the motion is taken under submission pursuant to Local Rule 230(g). Accordingly, the hearing on May 29, 2020 is **VACATED**. For the following reasons, the Court recommends Plaintiffs' motion for default judgment be **GRANTED IN PART**, in the modified amount of $**86,655.97.**

///

///

**I. Background and Procedural History**

Plaintiffs were employed as farmworkers in 2014 and 2015, during which time they worked at vineyards owned or operated by Leonardo Bros. (*See* Doc. 1 at 4-5; Doc. 83-1 at 4) Plaintiffs assert their employers failed to comply with federal and state labor laws and sought to hold them liable for the following: (1) violation of the Agricultural Workers Protection Act, 29 U.S.C. § 1801, *et seq*.; (2) failure to pay minimum wage under Cal. Labor Code §§ 510, 1194, 1194.2, 1197 and Wage Orders 8, 13, 14; (3) failure to pay overtime wages under Cal. Labor Code §§ 510, 1194, 1194.2, and Wage Orders 8, 13, 14; (4) failure to provide timely and complete rest periods or additional wages in lieu thereof under Cal. Labor Code §§ 226.7, 512 and Wage Orders 8, 13, 14; (5) failure to timely pay wages due under Cal. Labor Code §§ 201, 202, 203; (6) knowing and intentional failure to comply with itemized employee wage statement provisions under Cal. Labor Code §§ 226(B), 1174, 1175; (7) violation of Unfair Competition Law under Cal. Bus. & Prof. Code §§ 17200, *et seq*.; and (8) violation of the Private Attorneys General Act under Cal. Labor Code §§ 2698, *et seq*. (*See* Doc. 1 at 1, 13-26)

Golden West Labor filed its answer to the complaint on March 3, 2016. (Doc. 16) Plaintiffs and Golden West Labor engaged in discovery, after which they notified the Court of a settlement agreement on February 16, 2018. (Doc. 49) The parties stipulated to the dismissal of the claims against Golden West Labor pursuant to Rule 41 of the Federal Rules of Civil Procedure. (Doc. 52) Therefore, the action was closed as to Golden West Labor, and the entity was terminated as a defendant. (Doc. 54)

Leonardo Bros. was also served with the complaint but did not file an answer or otherwise respond within the time frame prescribed by the Federal Rules of Civil Procedure. Upon the request of Plaintiffs, the clerk of court entered default against Leonardo Bros. on March 29, 2016. (Docs. 21, 22) Plaintiffs sought class certification under Rule 23 of the Federal Rules of Civil Procedure, seeking to certify a class of workers who were denied paid rest breaks. (*See* Doc. 59)

On May 31, 2019, the Court granted Plaintiffs' motion for class certification. (Doc. 67) In doing so, the Court noted Plaintiffs asserted "eighty-three non-exempt agricultural workers did not receive separate compensation for rest breaks, or rest break premiums, from Leonardo Bros. after working at least one shift greater than 3.5 hours during the 2015 harvest season. (*Id.* at 6) Further, the

Court observed: "Expert analysis of the timekeeping and payroll data produced by Golden West Labor establishes that prospective class members, including the named plaintiffs, worked 305 piece-rate shifts that were 3.5 hours or greater with no separate compensation for rest breaks or rest break premiums." (*Id.* at 7) Finding the requirements for Rule 23 were satisfied, the Court certified an "Unpaid Rest Break Class" defined as:

> All non-exempt farmworkers jointly employed by Golden West Labor and Leonardo Bros. who were compensated on a piece-rate basis and worked at least one shift greater than 3.5 hours but did not receive a paid rest break from March 1, 2015 through October 31, 2015.

(Doc. 67 at 13) The Court named Plaintiffs as the class representatives and appointed Mallison & Martinez and Aguilasocho & Lynch, APLC as co-class counsel. (*Id.*)

Following certification of the Unpaid Rest Break Class, Plaintiffs filed a motion for default judgment, as well as attorneys' fees and costs incurred, seeking a total award of $2,576,214.05. (Doc. 69 at 2) The Court ordered Plaintiffs to file additional briefing in support of their application for default judgment, addressing the factors identified by the Ninth Circuit in *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). (Doc. 70 at 1) In addition, the Court ordered Plaintiffs to "file evidence related to the costs and attorney fees incurred, to support the requested amounts." (*Id.* at 1-2)

On March 2, 2020, the Court observed that following the filing of the motion, "California courts clearly distinguished between wages and penalties, and whether plaintiffs were able to state certain derivative claims based on the failure to pay rest period premiums." (Doc. 79 at 15) In addition, the Court determined Plaintiffs' motion suffered "from pleading and evidentiary failures related to their PAGA claim and the calculation of damages." (*Id.*) Therefore, the Court recommended the motion be denied without prejudice. (*Id.*) In the alternative, Plaintiffs were informed they could withdraw the motion and notify the Court of their intent to bring a new motion that addressed the identified deficiencies. (*Id.* at 15-16) Plaintiffs elected to withdraw the motion on March 4, 2020. (Doc. 81)

Plaintiffs filed a renewed motion for default judgment on April 30, 2020. (Doc. 83) Plaintiffs seek judgment in the amount of $572,979.62, including attorneys' fees and costs. (*Id.* at 2) Leonardo Bros. has not appeared or opposed the motion.

///

**II. Legal Standards Governing Entry of Default Judgment**

The Federal Rules of Civil Procedure govern the entry of default judgment. After default is entered because "a party against whom a judgment for relief is sought has failed to plead or otherwise defend," the party seeking relief may apply to the court for a default judgment. Fed. R. Civ. P. 55(a)-(b). Upon the entry of default, well-pleaded factual allegations regarding liability are taken as true, but allegations regarding the amount of damages must be proven. *Pope v. United States*, 323 U.S. 1, 22 (1944); *see also Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977). In addition, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of North Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

Entry of default judgment is within the discretion of the Court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The entry of default "does not automatically entitle the plaintiff to a court-ordered judgment. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1174 (C.D. Cal 2002), *accord Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). The Ninth Circuit determined:

> Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). As a general rule, the issuance of default judgment is disfavored. *Id.* at 1472.

**III. Plaintiffs' Factual Allegations**

The Court accepts Plaintiffs' factual assertions as true because default has been entered against Defendant. *See Pope*, 323 U.S. at 22. Plaintiffs allege they were jointly employed by Leonardo Bros. and Golden West Labor as non-exempt employees, "performing agricultural work." (Doc. 1 at 4-5, ¶¶ 13-14) Plaintiffs allege they, and other employees, were paid on a piece-rate basis by Defendants and were not properly compensated for the work performed. (*See id.* at 7, ¶¶ 22-23) Thus, Plaintiffs sought to hold Defendants liable for "unlawful labor policies … that revolve[d] around Defendants' piece rate system of compensation, their meal and rest break practices, and their record-keeping

procedures." (*Id.*, ¶ 23)

According to Plaintiffs, Defendants "fail[ed] to compensate for all 'hours worked' (within the meaning of the Wage Orders) and fail[ed] to pay overtime premium wages for work performed in the fields." (Doc. 1 at 7, ¶¶ 23-24)  Plaintiffs explain this included:

> regular hours worked that were not compensated at minimum or agreed upon rates, overtime hours worked that were either not compensated, or compensated at rates lower than the applicable overtime premium wage rate and/or without properly calculating the regular rate of pay for purposes of paying overtime, uncompensated or undercompensated time spent on statutory rest breaks, work meetings, and other activities.

(*Id.*, ¶ 24)  Thus, Plaintiffs assert they were paid less than minimum wage for all hours worked, in violation of federal and state labor laws.  (*See id.* at 12-16)

In addition, Plaintiffs assert the defendants maintained unlawful rest break policies, under which Leonardo Bros. failed to provide its employees: (1) at least two rest breaks for shifts greater than six hours, and/or three rest breaks for shifts exceeding ten hours, (2) ten-minute rest breaks, (3) timely rest breaks, and (4) paid rest breaks.  (Doc. 1 at 7, ¶ 25)  Instead, Plaintiffs assert Leonardo Bros. "had a policy of discouraging and preventing employees from taking rest breaks." (*Id.*)  Plaintiffs also report Leonardo Bros. had a policy "to not pay the premium wages owed to workers for missed, untimely and unpaid rest breaks." (*Id.*)

Further, Plaintiffs contend the defendants "fail[ed] to maintain accurate time-keeping records" and provided their employees with "inaccurate itemized wage statements that [did] not reflect all 'hours worked,' wages earned and applicable pay rates." (Doc. 1 at 7, ¶ 26)  According to Plaintiffs, the wage statements were not accurate because they:

> a. Falsely understated Plaintiffs' and the Class Members' gross and net wages earned by failing to pay for all hours worked and for premium wages;
>
> b. Falsely understated the total hours worked by Plaintiffs and the Class Members by ignoring the total of hours actually worked;
>
> c. Falsely understated Plaintiffs' and Class Members' "number of hours worked at each hourly rate;" [and]
>
> d. Failed to provide accurate applicable piece rate information[.]

(*Id.* at 21, ¶ 88)  Plaintiffs also contend that "[b]y failing to keep adequate time records," Defendants

made it difficult to calculate the unpaid rest and meal period compensation due."  (*Id.* at 21-22, ¶ 91)

## IV.    Discussion and Analysis

Applying the factors articulated by the Ninth Circuit in *Eitel*, the Court finds the factors weigh in favor of granting Plaintiffs' motion for default judgment.

### A.    Prejudice to Plaintiffs and the Class

The first factor considers whether a plaintiff would suffer prejudice if default judgment is not entered, and potential prejudice to the plaintiff weighs in favor of granting a default judgment.  *See Pepsico, Inc.*, 238 F. Supp. 2d at 1177.  Generally, where default has been entered against a defendant, a plaintiff has no other means by which to recover damages.  *Id.*; *see also Microsoft Corp. v. Nop*, 549 F. Supp.2d 1233, 1236-37 (E.D. Cal. 2008) ("Plaintiff will be prejudiced if default judgment is denied because plaintiff will be without other recourse for recovery").  Because Plaintiffs and the Unpaid Rest Break Class have no other means to recover damages from Leonardo Bros. for the identified labor violations, the Court finds they would be prejudiced if default judgment is not granted.[1]

### B.    Merits of Plaintiffs' claims and the sufficiency of the complaint

Given the kinship of these factors, the Court considers the merits of Plaintiffs' substantive claims and the sufficiency of the complaint together.  *See Yelp Inc. v. Catron,* 70 F. Supp. 3d 1082, 1098 (N.D. Cal. 2014) ("For ease of analysis, the merits of Plaintiffs substantive claims and sufficiency of the complaint are considered together"); *see also Premier Pool Mgmt. Corp. v. Lusk*, 2012 WL 15932060, at *5 (E.D. Cal. May 4, 2012).  The Ninth Circuit has suggested that, when combined, the factors require a plaintiff to "state a claim on which the plaintiff may recover."  *Pepsico, Inc.*, 238 F. Supp. 2d at 1175.

In the application for default judgment, Plaintiffs request damages for the Fourth, Fifth, Sixth, and Ninth[2] Claims for Relief presented in the complaint, including:  (1) "failure to provide properly timely paid rest periods or compensation in lieu thereof" in violation of Cal. Labor Code §§ 226.7, 512

---

[1] Plaintiffs settled their claims with Golden West Labor and dismissed this employer as a defendant.  However, a class had not been certified, and the Unpaid Rest Break Class members had no opportunity to recover damages for the identified wage and hour violations.

[2] In the motion for default judgment, Plaintiffs indicate they seek damages for the "Eighth Claim for Relief."  (*See* Doc. 83-1 at 10)  However, the Complaint does not include an "Eighth Claim," as the claims presented are mis-numbered and skip from the Seventh to Ninth Claim.  (*See* Doc. 1 at 22-24)  Nevertheless, it is clear Plaintiffs seek damages for the *Ninth* Claim for Relief in the Complaint, which arises under the Private Attorneys General Act. (*See* Doc. 83-1 at 10)

and Wages Orders 8, 13, and 14; (2) "failure to timely pay wages due at termination" in violation of Cal. Labor Code §§ 201, 202, and 203; (3) knowing and intentional failure to comply with itemized employee wage statement provisions" in violation of Cal. Labor Code §§ 206(B), 1174, and 1175; and (4) the Private Attorneys General Act, Cal. Labor Code §§ 2698. (*See* Doc. 1 at 17-24 [emphasis omitted]; *see also* Doc. 83-1 at 7-12) Accordingly, the Court addresses the merits of only these claims related to the motion now pending.

Plaintiffs contend the "class claims for rest periods and derivative violations are adequately pleaded and are meritorious." (Doc. 83-1 at 6, emphasis omitted)

1. Fourth Claim for Relief: Rest periods

"Plaintiffs allege that they and the class were not provided with separate payment for their ten (10) minute rest periods or paid additional wages in lieu thereof." (Doc. 83-1 at 7, citing Doc. 1, ¶¶ 68-76) Under Cal. Labor Code § 226.7(b), "No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission...." In relevant part, Industrial Welfare Commissioner Wage Order No. 14-2001 provides:

> Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours. Authorized rest period time shall be counted, as hours worked for which there shall be no deduction from wages.

8 Cal. Code Regs. § 11140. If an employer fails to comply with these provisions, "the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided." Cal. Labor Code § 226.7(c). Thus, if an "employers forces [an] the employee to miss a required rest break or does not provide the employee with a required rest break, then the employee is entitled to be paid immediately for the missed rest break." *Gomez v. J. Jacobo Farm Labor Contr., Inc.*, 334 F.R.D. 234, 257 (E.D. Cal. Nov. 5, 2019) (citing *Murphy v. Kenneth Cole Prods., Inc*., 40 Cal. 4th 1094, 1108 (2007)).

Notably, "[a]though employers are required to 'authorize and permit' rest breaks, employees are not required to take provided rest breaks and employers are not required to force employees to take provided rest breaks." *Gomez*, 334 F.R.D. at 257 (citing 8 Cal. Code Regs. § 11140(12); *Brinker Rest.*

*Corp. v. Superior Court*, 53 Cal. 4th 1004, 1033 (2012)).  Employers are not required record rest breaks for the employees.  *See id.*; 8 Cal. Code Regs. § 11140(7)(A)(3).  However, the failure to record rest breaks may create a rebuttable presumption that employees were not relieved of duty, and that a rest break was not provided. *See Brinker*, 53 Cal. 4th at 1053.

Further, because a piece-rate system "does not directly account for rest periods," California courts have determined that employers are required "to separately compensate employees for rest periods if an employer's compensation plan does not already include a minimum hourly wage for such time." *Vaquero v. Stoneledge Furniture, LLC*, 9 Cal. App. 5th 98, 110 (Cal. Ct. App. 2017); *see also Bluford v. Safeway Stores, Inc.*, 216 Cal. App. 4th 864, 870-72 (2013) ("rest periods must be separately compensated in a piece-rate system"); *Reinhardt v. Gemini Motor Transport*, 869 F.Supp.2d 1158, 1168 (E.D. Cal. 2010) (a piece-rate pay system that did not separately pay truck drivers for non-driving duties violated California law requiring compensation for each hour worked).  Thus, an employer may violate California wage and hour law where its employees are paid on a piece-rate basis— even if rest periods are provided— when separate compensation is not paid for the rest period. *See Gomez*, 2019 WL 5787805 at *17; *Vaquero*, 9 Cal. App. 5th at 110.

Plaintiffs alleged Leonardo Bros. "violated the applicable Wage Order and California Labor Code § 226.7 by failing to authorize and permit the appropriate number of rest breaks, failing to provide … ten minute rest breaks, failing to schedule rest breaks timely, failing to authorize and permit paid rest breaks and failing to pay additional rest break wages, and discouraging and preventing employees from taking rest breaks."  (Doc. 1 at 18, ¶ 72)  Plaintiffs asserted they, and class members, "did not voluntarily or willfully waive rest periods."  (*Id.*, ¶ 73)  Plaintiffs also alleged Leonardo Bros. "did not permit or authorize Plaintiffs to take proper timely paid rest periods." (*Id.*)  Instead, Plaintiffs assert Leonardo Bros. "had a policy of discouraging and preventing employees from taking rest breaks."  (*Id.* at 7, ¶ 25)

Consistent with the allegations in the complaint, Sandra Garybo and Agustin Vega submitted declarations in support of their motion for default judgment in which they report "[i]t was the practice of Leonardo Bros. to not permit workers to take 10 minute rest breaks."  (Doc. 83-7 at 3, Garybo Decl. ¶ 8; Doc. 83-8 at 3, Vega Decl. ¶ 8)  Ms. Garybo and Mr. Vega explicitly state they "did not take 10-

minute rest break" during either of their two seasons as employees for Leonardo Bros. (*Id.*) According to Plaintiffs, they were paid on a piece-rate basis and did not receive any separate compensation for rest breaks, which they know because they "would not see separate payment for … rest periods on [the] check stub." (Doc. 83-7at 2-3, Garybo Decl. ¶¶ 5, 7; Doc. 83-8 at 2-3, Vega Decl. ¶¶ 5, 7) Thus, Plaintiffs have submitted evidence to support the allegations—which the Court presumes as true in evaluating the motion for default judgment—that Leonardo Bros. failed to provide Plaintiffs and Class Members rest breaks in violation of California law.

2. Derivative Claims: Wages Due and Itemized Statements

"Causes of action for waiting time and itemized wage statement penalties," which arise under Cal. Labor Code §§ 203 and 226, "generally are referred to as derivative of an employee's right to the wages themselves." *Naranjo v. Spectrum Security Services, Inc.*, 40 Cal. App. 5th 444, 468 (2019). The court explained: "An employee's right to wages accrues at the time work is performed, but '[t]he right to a penalty … does not vest until someone has taken action to enforce it.'" *Id.* (quoting *Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal.4th 1094, 1108 (2007)). Plaintiffs contend Leonardo Bros. is liable for the "derivative violations" of failure to pay wages due and failure to provide complete and accurate wage statements, in violation of California Labor Code §§ 201, 202, 203 and 226. (Doc. 83-1 at 6, 8-10) (emphasis omitted)

*a. Fifth Cause of Action: Wages due upon termination*

Under California law, "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Cal. Labor Code § 201. In addition, if an employee without a contract for a definite period quits a position, "wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting." Cal. Lab. Code § 202(a). "If an employer willfully fails to pay, without abatement or reduction, … any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Cal. Lab. Code § 203(a).

According to Plaintiffs, "the failure to pay rest period premiums timely upon the separation from employment gives rise to waiting time penalties under section 203." (Doc. 83-1 at 9) (citing *In re Autozone, Inc.*, 2016 WL 4208200, at *6 (N.D. Cal. Aug. 10, 2016)) Plaintiffs contend because they were not timely compensated for the rest periods, and thus were "not timely paid all wages owed after termination in 2015, they are entitled to waiting time penalties for the 2015 season." (Doc. 83-1 at 9) Further, Plaintiffs assert they "are entitled to waiting time penalties after discharge from seasonal work because they were not compensated for rest period premiums." (*Id.*, citing *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1114 (2007)).

*b. Sixth Cause of Action: Itemized wage statements*

Section 226 requires employers to keep accurate itemized pay statements, including gross wages, net wages, and the total number of hours worked. Cal. Lab. Code § 226(a)(1), (2), (5). To recover damages, an employee must allege that he or she "suffer[ed] injury as a result of a knowing and intentional failure by an employer to comply…." *Id.* § 226(e)(1); *see also Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136, 1142 (2011). Plaintiffs contend Leonardo Bros. "violated section 226 by failing to issue wage statements reflecting that Plaintiffs and the class received separately paid rest breaks." (Doc. 83-1 at 10)

*c. Section 226.7 payments and derivative claims*

Recently, this Court observed that when individuals work on a piece-rate basis, they "are not entitled to additional compensation for the foregone breaks." *See Gomez*, 334 F.R.D. at 259 (citing *Perez v. Sun Pac. Farming Co-op., Inc.*, 2015 WL 3604165, at *7 (E.D. Cal. June 8, 2015) ["When an employer pays its employees by the piece, however, those employees cannot add to their wage during rest breaks; a break is not for rest if piece-rate work continues"]; *Vaquero v. Stoneledge Furniture LLC*, 9 Cal. App. 5th 98, 111 (2017) ["Indeed, the purpose of a rest period is to rest, not to work"])) Such circumstances—where employees report they worked through rest breaks that were not provided—support a conclusion that payments under Section 226.7 are *penalties* for the failure to provide a rest break.

Significantly, California's Second District Court of Appeal recently determined a claim under Section 226.7 does not entitle an aggrieved employee to pursue derivative penalties under Sections 203

and 226. *Naranjo*, 40 Cal. App. 5th at 473. The court also reasoned that payments for failure to provide rest periods are not *wages* owed to employees for time worked, but rather are *penalties* paid by the employer. *Id.* at 473-474. The court acknowledged that in *Murphy*, the court "characterized the remedy for an employer's meal and rest break violation as a premium wage for the purpose of the statute of limitations," but found the legislature did not amend the statutory definition of "wages," and the definition "was not expanded to include the payment of a remedy rather than simply the payment for labor." *Id.* at 473. In addition, the court stated:

> Section 203 penalizes an employer that willfully fails "to pay … any wages" owed to a fired or voluntarily separating employee. The penalty is paid to the employee, not for "labor, work, or service … performed personally by the [employee]" (§ 200, subd. (b)), but for the employer's recalcitrance. Read this way, an employer's failure, however willful, to pay section 226.7 statutory remedies does not trigger section 203's derivative penalty provisions for untimely wage payments.
>
> The result is the same for section 226. Section 226, subdivision (e)(1) entitles an employee to minimum fixed penalties or "actual damages" "not to exceed … $4,000," plus attorney fees if the itemized statement omits gross and net "wages earned." Section 226.7's premium wage is a statutory remedy for an employer's conduct, not an amount "earned" for "labor, work, or service … performed personally by the [employee]." (§ 200, subd. (b).)
>
> The language in sections 200, 203, and 226 "is clear and unambiguous, … [and there is] nothing for [this] court to interpret or construe." (*MacIsaac*, supra, 134 Cal.App.4th at p. 1083, citations omitted.) Accordingly, we hold that **section 226.7 actions do not entitle employees to pursue the derivative penalties in sections 203 and 226**.

*Naranjo*, 40 Cal.App.5th at 474-74 (modifications in original) (emphasis added). Likewise, the Fifth and Sixth District Courts of Appeal concluded that a waiting time claim may not be based upon the award of premiums under Section 226.7 for missed breaks. *See Ling v. P.F. Chang's China Bistro, Inc.*, 245 Cal.App.4th 1242, 1261 (2016) ("section 226.7 cannot support a section 203 penalty because section 203… tethers the waiting time penalty to a separate action for wages" and a claim for premium pay under section 226.7 was not an action for *wages*); *Maroot v. Insulation Constr. & Supply*, 2019 WL 3725897 (Cal.App.5th Aug. 7, 2019) ("waiting time penalties… cannot be based on an award of premium pay under section 226.7"). Consequently, because Plaintiffs base their Fifth and Sixth Claims for Relief upon the failure to pay penalties under Section 226.7, Plaintiffs fail to show they are entitled to the derivative penalties under Sections 203 and 226.

///

3. Ninth Claim for Relief: PAGA

Plaintiffs assert a claim under the California Private Attorneys General Act of 2004 ("PAGA"), California Labor Code § 2699 *et seq*. (*See* Doc. 83-1 at 10) California adopted PAGA to allow individual plaintiffs "to bring a civil action to collect civil penalties for Labor Code violations previously only available in enforcement actions initiated by the State's labor law enforcement agencies." *Caliber Bodyworks v. Superior Court*, 134 Cal. App. 4th 365, 374 (2005); *see also* Cal. Lab. Code § 2699(a); *Urbino v. Orkin Servs. of Cal., Inc*., 726 F.3d 1118, 1121 (9th Cir. 2013).

To claim PAGA penalties, a plaintiff must exhaust the administrative procedures set out in Labor Code § 2699.3, which includes giving written notice to the California Labor and Workforce Development Agency and the defendants. *Caliber,* 134 Cal. App. 4th at 375-76; Cal. Lab. Code § 2699.3(a)(1). After the LWDA responds that it will not prosecute the action, or fails to respond to the notice, a plaintiff may file suit. *Id.* § 2699.3(a)(2)(A). A plaintiff "must plead compliance with the pre-filing notice and exhaustion requirements" to state a cognizable claim under PAGA. *See Thomas v. Home Depot USA Inc*., 527 F.Supp.2d 1003, 1007 (N.D. Cal. 2007). Cal. Labor Code § 2699.3 provides in relevant part:

> The aggrieved employee or representative shall give written notice by online filing with the Labor and Workforce Development Agency and by certified mail to the employer of the specific provisions of this code alleged to have been violated, including the facts and theories to support the alleged violation.

Cal. Labor Code § 2699.3(a)(1)(A).

In the complaint filed on September 30, 2015, Plaintiffs alleged that "[a]ll PAGA administrative requirements will have been met for this purpose prior to service of this complaint." (Doc. 1 at 2, ¶ 2) However, whether the administrative requirements have been satisfied is a legal conclusion and not entitled to the assumption of truth given to factual allegations. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009). Significantly, PAGA claims are limited to the specific theories identified in a prior LWDA notice letter. *Holak v. K Mart Corp*., 2015 WL 2384895, at *3 (E.D. Cal. May 19, 2015).

Plaintiffs provided a copy of the PAGA notice letter dated November 13, 2015, which indicated the "core of Defendants (sic) violations are unlawful payroll and labor practices or policies whereby workers [were] required, suffered or permitted to work without compensation; workers were not

advised of their right to take proper rest or recovery breaks, that proper rest and recovery breaks were not made properly available, and that employees were discouraged or otherwise prevented from taking proper breaks." (Doc. 83-3 at 3) Further, Plaintiffs asserted the defendants did not provide proper wage statements, record all hours, or pay "all wages owed upon separation from employment." (*Id.*) Plaintiffs also identified the specific sections of the California Labor Code and applicable Wage Orders they believed had been violated through these actions. (*Id.* at 3-4) Thus, it appears the information was "specific enough such that the LWDA and the defendant can glean the underlying factual basis for the alleged violations," and Plaintiffs satisfied the administrative requirements for their PAGA claim. *See Holak*, 2015 WL 2384895, at *3.

Because Plaintiffs stated a claim for failure to provide paid rest periods under Cal. Labor Code § 226.7, they are also entitled to seek penalties under PAGA for the violation. *See Guifu Li v. A Perfect Day Franchise, Inc.*, 2012 WL 2236752 at *17 (N.D. Cal. June 15, 2012) ("PAGA penalties are separate and apart from the actual damages that a Plaintiff may recover under other labor code sections"), *citing Thurman v. Bayshore Transit Management, Inc.*, 203 Cal. App. 4th 1112, 1144-48 (2012).

**C. Sum of money at stake**

In considering this factor, the Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Pepsico, Inc.*, 238 F.Supp.2d at 1176. Here, Plaintiffs seek judgment in the amount of $572,979.62, including attorneys' fees and costs. (Doc. 83 at 2, ¶ 4)

Given the amount of money at stake, this factor could weigh against the entry of default judgment. *See, e.g., Vogel v. Rite Aid Corp.*, 992 F.Supp.2d 998, 1012 (C.D. Cal. 2014); *Joe Hand Promotions v. Streshly*, 655 F.Supp.2d 1136 (S.D. Cal. 2009); *see also Moore v. Cisneros*, 2012 WL 639500, at *5 (E.D. Cal. Feb. 27, 2012) ("the fact that a large sum of money is at stake is a factor disfavoring default judgment"). However, this Court also determined that when statutes identify the amount of damages that may be awarded and contemplate such awards, this factor does not weigh against default judgment. *United States EEOC v. Zoria Farms, Inc.*, 2016 WL 8677142 at *9 (E.D. Cal. May 13, 2016) (noting that even when there is a substantial amount of money, if the amount requested "is not greater than that provided by statute…[t]his factor does not weigh against entry of

default judgment). Accordingly, the Court finds this factor does not weigh against Plaintiffs' request for default judgment.

**D. Possibility of dispute concerning material facts**

There is little possibility of dispute concerning material facts because (1) based on the entry of default, the Court accepts factual allegations in Plaintiffs' Complaint as true and (2) though properly served, Defendant Leonardo Bros. failed to appear and defend. *See Pepsico, Inc.*, 238 F.Supp.2d at 1177; *see also Elektra Entm't Group, Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists"). Therefore, this factor does not weigh against default judgment.

**E. Whether default was due to excusable neglect**

Generally, the Court will consider whether a defendant's actions, such as a failure to file an answer, is due to excusable neglect. *See Eitel*, 782 F.2d at 1472. Here, Leonardo Bros. was served with the summons and complaint on January 4, 2016. (Doc. 5; Doc. 21-1 at 2, ¶ 2) Thus, it is unlikely the failure to respond was the result of excusable neglect. *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) (finding no excusable neglect because the defendants "were properly served with the Complaint, the notice of entry of default"). Accordingly, this factor does not weigh against default judgment.

**F. Policy disfavoring default judgment**

As noted above, default judgments are disfavored because "[c]ases should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. Here, however, the policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits does not weigh against default judgment because the defendant's failure to appear makes a decision on the merits impractical.

## V. Relief Requested

Based upon the foregoing, Plaintiffs have stated a claim for failure to provide rest breaks in violation of Cal. Labor Code § 226.7, and the *Eitel* factors weigh in favor of granting default judgment. Therefore, the Court turns to the relief requested related to this claim and the evidence presented by Plaintiffs related to the damages and PAGA penalties. *See Pope*, 323 U.S. at 22 (allegations regarding

the amount of damages must be proven); *see also Pope v. United States*, 323 U.S. 1, 22 (1944); *DR JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1051 (N.D. Cal. 2010) ("Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages").

**A. Damages under Cal. Labor Code § 226.7**

When an employer fails to provide a required rest break, "the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided." Cal. Labor Code § 226.7(c). Notably, Section 226.7 permits only one recovery *per workday*, not per shift violation. *United Parcel Service Wage & Hour Cases*, 196 Cal. App. 4th 57, 69 (2011) (holding employees are permitted only one premium per day "for failure to provide one or more rest periods"); *Sadler v. Ensignal, Inc.*, 2017 WL 2333528 at *5 (E.D. Cal. May 26, 2017) ("section 226.7 provides that an employee shall receive one additional hour of pay at the employee's regular rate of pay for each **workday** that the meal or rest period is not provided") (emphasis in original) Thus, Plaintiffs must present evidence related to the number of workdays that Class Members were not provided a rest period by Leonardo Bros.

Plaintiffs retained Aaron Woolfson as an expert to "analyze time keeping and payroll data produced by Defendants." (Doc. 83-9 at 2, Woolfson Decl. ¶ 1) Mr. Woolfson reports he received information from Golden West's program, which he used to create the timekeeping and payroll data before the Court. (*Id.* at 7, ¶ 20) Mr. Woolfson reports: "For purposes of this motion, I limited my analysis to daily work performed by class members and Plaintiffs Sandra Garybo and Agustin Vega during the 2015 harvest season that was piece-rate work... and was equal-to-or-greater than 3½ hours with no rest break premiums and no separate Rest and Recovery." (*Id.* at 11, ¶ 28) In doing so, Mr. Woolfson determined the data showed "305 piece-rate days worked by eighty-three (83) employees, including the named Plaintiffs, that were 3½ hours or greater in length with no separate rest break compensation and no rest break premiums in payroll during the 2015 harvest season." (*Id.*, ¶ 29) Mr. Woolfson then "applied a one-hour wage premium at the minimum wage (since there was no hourly rate) to determine the amount of damages owed and applied interest," and determined the amount owed for the 83 workers was $6,764.47. (Doc. 83-1 at 8, citing Woolfson Decl. ¶¶ 29, 32, 33 [Doc. 83-9 at 11-13]) Thus, the Court finds Plaintiffs have presented evidence of damages in the amount of $6,764.47

for their claim arising under Section 226.7, and recommends the motion for damages related to the Fourth Claim for Relief and rest period violations be **GRANTED**.

**B. PAGA penalties**

As noted above, a plaintiff who has shown a failure to provide paid rest periods may also seek penalties under PAGA for the violation. *See Cabardo v. Patacsil*, 248 F. Supp. 3d 1002, 1013 (E.D. Cal. 2017) ("Plaintiffs can recover both the statutory penalties set forth in § 226(e) and civil penalties pursuant to PAGA"); *Guifu Li*, 2012 WL 2236752 at *17 ("PAGA penalties are separate and apart from the actual damages that a Plaintiff may recover under other labor code sections"). However, when civil penalties are recovered, the Labor and Workforce Development Agency receives 75 percent "for enforcement of labor laws," while the remaining 25 percent goes to the aggrieved employees. Cal. Labor Code § 2699(i).

The failure to pay the premium due for rest periods is recoverable under Cal. Labor Code § 558, which imposes civil penalties on any employer who violates "a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission." *Id.* Section 558 provides that civil penalties are calculated as follows: (1) $50 for any initial violation, for each underpaid employee per pay period; and (2) $100 for each subsequent violation, for each employee per pay period. Cal. Labor Code § 558(a); *see also Cabaro v. Patacsil*, 2020 U.S. Dist. LEXIS 84474 at *16-17 (E.D. Cal. May 12, 2020) (calculating PAGA penalties for failure to provide meal and rest breaks under Section 558).

Using the data from Defendants, Mr. Woolfson reports that for the 83 employees in the class, the penalties under Section 558 total $23,150.00. (Doc. 83-9 at 13, Woolfson Decl. ¶ 33; *see also* Doc. 83-21) Thus, the Court recommends Plaintiffs' motion for penalties under Section 558 be **GRANTED** in the amount of $23,150.00, with 75 percent payable to the LWDA. Because the remaining claims are derivative of the rest break claim—as Plaintiffs acknowledge (Doc. 83-1 at 12)—the Court finds Plaintiffs are not entitled to penalties for the derivative causes of action and recommends the request for penalties related to the failure to pay wages, accurate wage statements, underpaid wages, and waiting time be **DENIED**.

///

**VI. Attorneys Fees and Costs**

Plaintiffs seek an award of fees and costs in the action, asserting they "are entitled to recover attorneys' fees and costs for the violations that they were subjected to as provided in California Labor Code sections 1194, 1194.2, 1695.7(c)(4), and 2699." (Doc. 83-1 at 13)

Notably, although Plaintiffs assert a right to fees under Section 1695.7, this statute relates to the licensing obligations of a farm labor contractor to "provide the grower a copy of his or her current valid state license" and the contracting for such services. *See* Cal. Cal. Labor Code § 1695.7. Plaintiffs have not brought a claim for a violation of this statute and fail to show the applicability of its fees provision. Thus, they are not entitled to fees and costs on these grounds.

Likewise, Plaintiffs did not certify a class based upon the failure to pay minimum wage and have not stated a claim for failure to pay minimum wage that is not derivative of the failure to pay the penalties related to rest periods. Thus, the Court is unable to find Plaintiffs are entitled to fees and costs under Section 1194.2, which authorizes fees in actions "under Sections 98, 1193.6, 1194 or 1197 to recover *wages* because of the payment of a wage less than the minimum wage fixed by an order of the commission or by statute." Cal. Labor Code § 1194.2 (emphasis added); *see also Betancourt v. OS Rest. Servs., LLC*, 2020 Cal. App. Unpub. LEXIS 2676 at *11 (Cal.App.2nd. Apr. 30, 2020) ("[A] plaintiff cannot obtain attorney fees in an action for failure to provide rest breaks or meal periods. That is because an action for nonprovision of meal or rest breaks is not an action brought for nonpayment of wages.").

On the other hand, PAGA provides that "[a]ny employee who prevails in any action shall be entitled to an award of reasonable attorney's fees and costs." Cal. Lab. Code § 2699(g)(1). The statute does not provide a specific standard for the evaluation of attorneys' fees in connection with a PAGA claim. *See id.* However, a party seeking fees bears the burden of establishing that the fees and costs were reasonably necessary to achieve the results obtained. *See Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). A fee applicant must provide time records documenting the tasks completed and the amount of time spent. *Hensley v. Eckerhart*, 461 U.S. 424, 424 (1983); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007). "Where the documentation of hours in inadequate, the district court may reduce hours accordingly." *Hensley*, 461 U.S. at 433.

**A. Hourly rates**

As an initial matter, the hourly rates sought by counsel and the professional staff are not in accord with the market rate for this community. The Supreme Court explained that attorney fees are to be calculated with "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895-96 and n.11 (1984). In general, the "relevant community" for purposes of determining the prevailing market rate is the "forum in which the district court sits." *Camacho*, 523 F.3d at 979. Thus, when a case is filed in the Fresno Division of the Eastern District of California, "[t]he Eastern District of California, Fresno Division, is the appropriate forum to establish the lodestar hourly rate . . ." *See Jadwin v. County of Kern*, 767 F.Supp.2d 1069, 1129 (E.D. Cal. 2011).

The fee applicant bears a burden to establish that the requested rates are commensurate "with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895 n.11. The applicant meets this burden by "produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 896 n.11; *see also Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1110-11 (9th Cir. 2014) ("Affidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community . . . are satisfactory evidence of the prevailing market rate.") However, "rates, other than those of the forum, may be employed if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992). Plaintiffs present no evidence that local counsel was either unwilling or unable to prosecute their claims in this action. Thus, the Court must determine whether the hourly rates requested by counsel are reasonable for the Fresno Division of the Eastern District.

<u>1. Rates for counsel</u>

The attorneys at Mallison & Martinez seek hourly rates ranging from $325 to $800, while attorneys at Law Offices of Martinez Aguilasocho & Lynch seek hourly rates ranging from $350 to $500. (Doc. 83-2 at 13-14; Doc. 83-5 at 4) Plaintiffs assert,

> The hours and rates requested for Plaintiffs' counsel are comparable to those approved in other litigation in the Eastern District. *See, e.g., Emmons v. Quest Diagnostics*

> *Clinical Laboratories, Inc*., 2017 U.S. Dist. LEXIS 27249, at *22 (E.D. Cal. Feb. 24, 2017) [hourly rates between $545 and $695 for senior counsel and partners, and between $370 and $495 for associates were reasonable]; *Barbosa v. Cargill Meat Solutions Corp*., 297 F.R.D. 432 (E.D. Cal. 2013) ["prevailing hourly rates in the Fresno division of the Eastern District… are in the $400 range, with rates up to $650 to $675 approved for partners and senior associates with significant years of experience" finding that $720 per hour for an attorney with 21 years of experience; $560 per hour for an attorney with 8 years of experience; $400 per hour for an attorney with 5 years of experience; and $280 for an attorney with 2 years of experience were reasonable]; *Gong-Chun v. Aetna, Inc*., 2012 U.S. Dist. LEXIS 96828, at *60-63 (E.D. Cal. July 11, 2012) [reasonable rates for the Fresno area: $695 per hour for an attorney with 30 years of experience; between $590 and $655 per hour for attorneys with 12 to 16 years of experience; between $475 and $520 per hour for attorneys with 6 to 9 years of experience; and between $300 and $420 per hour for attorneys with 1 to 5 years of experience].

(Doc. 83-1 at 13-14)

Significantly, the cases cited by Plaintiffs offer limited assistance to the Court to determine the reasonableness of the hourly rates requested by counsel in this action. For example, in *Emmons*, the Court performed a lodestar cross-check for the final approval of a class settlement and noted that the requested "rates between $370 and $495 for associates and $545 and $695 for senior counsel and partners… have been accepted as reasonable by other courts." *Id.*, 2017 WL 749018 at *8 (citing *Klee v. Nissan N. Am., Inc.,* 2015 WL 4538426, at *13 (C.D. Cal. July 7, 2015)) Thus, the Court did not evaluate the reasonableness of the hourly rate for the Fresno Division, but instead merely accepted the rates from the Central District, where the attorneys practiced, for purposes of the lodestar cross-check against the fees requested from the settlement fund. *See id.*

Further, Plaintiffs fail to offer any analysis as to why the hourly rates awarded in the cited cases should be awarded here. For example, Plaintiffs do not assert whether the attorneys who were awarded the highest rates in the other actions had were of "comparable skill, experience, and reputation," which are all proper factors for the Court to consider in evaluating the hourly rates of the community. *See Blum,* 465 U.S. at 895 n.11. The Court declines to speculate as to the basis for the hourly rates requested by counsel, where the burden is upon Plaintiffs to present evidence that demonstrates the reasonableness of the hourly rates. *See id.; Chaudhry,* 751 F.3d at 1110-11.

Previously, this Court declined to calculate a lodestar with the hourly rate requested by Stan Mallison—which was $650 per hour in 2014, only a year before he began working on this action—in *Ontiveros v. Zamora,* 303 F.R.D. 356, 373-74 (E.D. Cal. 2014). The Court noted that the hourly rates

were "high for even the most experienced attorneys in the Eastern District." *Id.* at 374 (citing *Johnson v. Allied Trailer Supply*, 2014 WL 1334006 at *5 (E.D. Cal. Apr. 3, 2014); *Joe Hand Promotions v. Albright*, 2013 WL 4094403 at *2 (E.D. Cal. Aug. 13, 2013). Consequently, the Court calculated the lodestar using $400 as the hourly rate for the partners at Mallison & Martinez and $175 as the rate for associates. *Id.* Although *Ontiveros* was filed in the Sacramento Division of the Eastern District, these hourly rates demonstrate that the hourly rates requested herein are not aligned with hourly rates in the Eastern District.

Previously, the Court reviewed hourly rates and determined "courts in the Eastern District of California Fresno Division have approved hourly rates ranging from $200.00 to $550.00 per hour." *Brewer v. Leprino Foods Company*, 2019 WL 3202825 at *4 (E.D. Cal. July 15, 2019); *see also Roach v. Tate Publ'g & Enter.*, 2017 WL 5070264 at *9 (E.D. Cal. Nov. 3, 2017) (observing that in 2017, "the current reasonable range of attorneys' fees for cases litigated in the Eastern District of California's Fresno Division [was] between $250 and $400 per hour"). In general, "the highest rates generally reserved for those attorneys who are regarded as competent and reputable and who possess in excess of 20 years of experience." *Silvester v. Harris*, 2014 WL 7239371 at *4 (E.D. Cal. Dec. 17, 2014). For attorneys with approximately fifteen years of experience, the hourly rate of $300 is appropriate. *See Trujillo v. Singh*, 2017 WL 1831941 (E.D. Cal. May 8, 2017). However, for attorneys with "less than ten years of experience . . . the accepted range is between $175 and $300 per hour." *Silvester*, 2014 WL 7239371 at *4; *see also Cervantes v. Vargas*, 2018 WL 2455615, at *7-8 (E.D. Cal. June 1, 2018) (finding $275.00 per hour reasonable for attorney with nine years of experience in litigation). With these parameters in mind, the hourly rates for counsel must be adjusted to those of the local forum.

Hours for each of the attorneys who have been admitted to practice for 20 years or more—including Stan Mallison and Mario Martinez—will be calculated at the rate of $500 per hour.[3,4] The

[3] Plaintiffs did not provide clear information regarding when Stan Mallison began practicing law, but rather only reported that he "earned his law degree from Stanford University in 1996." (Doc. 83-2 at 10, Mallison Decl. ¶ 17) However the Court "may take judicial notice of the State Bar of California's website regarding attorneys' dates of admission to the Bar." *Davis v. Hollins Law*, 25 F.Supp.3d 1292, 1298 n. 5 (2014). Thus, the Court takes judicial notice of the admission date of Stan Mallison as December 1996, as represented on the website of the State Bar of California. *See id.;* Fed. R. Evid. 201(b).

rates for Edgar Aguilasocho and Anna Walther, who were admitted to practice in 2012, are adjusted to $275. Likewise, the hourly rate for Joseph Sutton, who had been practicing for approximately eight years when he worked in this action, are adjusted to $275 per hour.[5] The hourly rate for Liliana Garcia, who was admitted to practice in 2016, will be adjusted to $200. Finally, the rates for Staci Schoff and Natalia Ramirez Lee—who were admitted to the bar in 2018—will be adjusted to $175.

Based upon the prior survey of the attorney fees in the Fresno Division and the Court's own knowledge, these hourly rates are reasonable. *See Brewer*, 2019 WL 3202825 at *4; *Silvester*, 2014 WL 7239371 at *4; *see also Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (concluding "the district court did not abuse its discretion either by relying, in part, on its own knowledge and experience" to determine reasonable hourly rates).

2. Non-attorney staff

Class Counsel calculated their lodestar using hourly rates ranging from $150 to $225 for non-attorney support staff. (*See* Doc. 83-2 at 13-14; Doc. 83-5 at 4) Generally, paralegal rates within the Fresno Division of the Eastern District range between $75 to approximately $150.00. *See Silvester v. Harris*, 2014 WL 7239371 at *4 (E.D. Cal. Dec. 17, 2014) ("[t]he current reasonable hourly rate for paralegal work in the Fresno Division ranges from $75 to $150, depending on experience"); *Trujillo v. Singh*, 2017 WL 1831941 at *3 (E.D. Cal. May 8, 2017) (finding the requested hourly rates of $95-115 were reasonable in the Fresno Division).

Mr. Martinez reports that the non-attorney staff who worked on the case from his firm were Aida Sotelo and Brenda Rizo. (Doc. 83-5 at 4, Martinez Decl. ¶ 7) According to Mr. Martinez, "Ms. Sotelo has a JD from Western Sierra Law School, and fifteen years of experience as a paralegal working with farm workers in the region, first with Camacho Law and since 2015 with Martinez Aguilasocho & Lynch." (*Id.*) He also reports that Ms. Rizo "graduated from UC Berkeley, and has

---

[4] Mr. Martinez requested the hourly rate of $500. (Doc. 83-4 at 4) Thus, there is no adjustment for his hourly rate, which is reasonable in light of his 21 years of experience as a lawyer and "significant experience representing farm workers in State and Federal courts." (*See id.* at 2, ¶ 1)

[5] Plaintiffs did not provide information regarding when Joseph Sutton began practicing law, though they reported he practiced litigation prior to joining the firm in 2011. (Doc. 83-2 at 10, Mallison Decl. ¶20) For the reasons set forth above, the Court takes judicial notice of the admission date of Joseph Sutton as June 2010, as represented on the website of the State Bar of California. *See Davis*, 25 F.Supp.3d at 1298 n. 5.; Fed. R. Evid. 201(b).

seven years of experience as a paralegal working with farm workers in the region, first with Camacho Law (2012) and with Martinez Aguilasocho & Lynch since 2015." (*Id.*, ¶ 8)  Based upon the information provided regarding the experience of the non-attorney staff at Martinez Aguilasocho & Lynch, the Court finds the hourly rates of $150 for Ms. Sotelo and $125 for Ms. Rize are appropriate.

Plaintiffs do not provide any information regarding the experience of Rocio Espinoza or Hazel Rodriguez. Given the lack of information, the Court adjusts their hourly rates to $100 per hour. *See Willis*, 2014 WL 3563310 at *14 (setting the hourly rate for a paralegal at $100 where the plaintiffs did "not offer[] any reason" to support a rate "set at the highest level in this district").

**B.   Hours expended**

A fee applicant must provide time records documenting the tasks completed and the amount of time spent. *Hensley v. Eckerhart*, 461 U.S. 424, 424 (1983); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007).  Representatives from the law firms designated as Plaintiffs' counsel have provided a declaration including the hours worked in support of the request for attorney fees. Accordingly, the Court has reviewed the hours reported by each firm to determine whether they are reasonable and compensable.

1.   Mallison & Martinez

Stan Mallison reports that the attorneys and support staff spent 127.9 hours on this action. (Doc. 83-2 at 13-14; Mallison Decl. ¶ 25; *see also* Doc. 83-4)  However, a review of the time sheets provided indicates that the billed time includes clerical tasks, excessive time, and internal communications that should be omitted from the fee award. *See Hensley*, 461 U.S. at 434 (a fee applicant "should make a good-faith effort to exclude from a fee request hours that are … redundant, or otherwise unnecessary"); *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989).

*a.   Clerical tasks*

The Supreme Court determined that "purely clerical or secretarial tasks should not be billed at a paralegal or [lawyer's] rate, regardless of who performs them." *Missouri*, 491 U.S. at 288 n.10.  Thus, courts have discounted billing entries for "clerical tasks" such as "filing, transcript, and document organization time." *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009); *see also Harris v. L & L Wings, Inc.*, 132 F.3d 978, 985 (4th Cir. 1997) (approving the court's elimination of hours spent on

secretarial tasks from the fees calculation); *L.H. v. Schwarzenegger*, 645 F. Supp. 2d 888, 899 (E.D. Cal. 2009) (finding organizing and updating files were clerical tasks, and declining to award fees where the applicant "tendered no evidence that these are tasks that required the skill of a paralegal"); *Jones v. Metropolitan Life Ins. Co.*, 845 F. Supp. 2d 1016, 1027 (N.D. Cal. 2012) (discounting time for "filing or retrieving electronic court documents or copying").

The billing records include entries from Hazel Rodriguez for calendaring deadlines, downloading documents, uploading documents, filing, and organizing exhibits. (Doc. 83-4 at 4-6) Due to the clerical nature of each of these tasks, the lodestar calculation for Ms. Rodriguez will be reduced by 9.0 hours.

*b. Excessive time*

On the billing records, Mr. Mallison indicated that he spent 1 hour and 15 minutes on May 11, 2016 for the scheduling conference. (Doc. 83-4 at 2) However, the Court's records indicate the scheduling conference on that date lasted for only thirty minutes. Therefore, Mr. Mallison's time will be reduced by 0.75 hour.

Similarly, the time reported by Natalia Ramirez Lee related to drafting a "Notice of Non-Opposition" to the motion for class certification was excessive. The Court is unable to find the 5.5 hours is reasonable— particularly where the work was performed by an attorney who had not yet worked on the action and needed 2.7 hours to review the case status— for preparation of the Notice of Non-Opposition. (*See* 83-4 at 3-4) Furthermore, the Court does not require such documents to be filed, as it is clear from a mere glance at the docket whether a party has opposed a motion. Because 0.5 hour would be a reasonable amount of time to prepare the document that was only two paragraphs in length, the Court reduces the lodestar calculation for Ms. Lee by 5.0 hours.

*c. Internal communications and review*

The Ninth Circuit has "recognized that 'the participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort.'" *McGrath v. County of Nevada*, 67 F.3d 248, 256 (1995) (quoting *Kim v. Fujikawa*, 871 F.2d 1427, 1435 n.9 (9th Cir. 1989)). However, in general, counsel should not bill for internal communications and communicating with each other, as such time is unnecessary. *See, e.g., In re Mullins*, 84 F.3d 459, 467 (D.C. Cir. 1996); *Robinson v.*

*Plourde*, 717 F. Supp. 2d 1092, 1099 (D. Haw. 2010).

This Court previously observed, "many courts have ... reduced fee awards for time spent in 'interoffice conferences' or other internal communications." *Gauchat-Hargis v. Forest River, Inc.*, 2013 WL 4828594 at *3 (E.D. Cal. Sept. 9, 2013) (citing*, e.g.*, *Mogck v. Unum Life Ins. Co. of Am*., 289 F.Supp.2d 1181, 1194 (S.D. Cal. 2003) [reducing selected time entries because attorneys "billed an inordinate amount of time for interoffice conferences"]; *Coles v. City of Oakland*, 2007 WL 39304, at *10 (N.D. Cal. Jan. 4, 2007) ["communication between attorneys may indicate unreasonable overstaffing such that a reduction in hours is appropriate"]). Notably, a review of the billing records from Mallison & Martinez reveals a significant amount of time spent on internal communications and strategy discussions.

For example, Ms. Rodriguez billed for tasks she categorized as "communicating with counsel," including following up with co-counsel regarding an email on June 14, 2019. (Doc. 83-4 at 4) She also billed for communication with an attorney "re Strategy etc" on June 18, 2019. (*Id.*) The same date, Staci Schoff billed 0.4 hour for a "Status Discussion" that included "figuring out with Hazel what needs to be done to update the motion." (*Id.*) Ms. Rodriguez and Liliana Garcia also billed for communications and strategy discussions in June and August 2019. (*Id.* at 5-6) Because these discussions resulted in an inflation of the time billed on the action and duplicative work, the Court will reduce the time reported by Ms. Rodriguez for each of the internal communications and award only the time billed by counsel. *See Gauchat-Hargis*, 2013 WL 4828594 at *3; *Mogck*, 289 F.Supp.2d at 1194. This results in a reduction of 3.2 hours. (*See id.* at 4-5)

2. Martinez Aguilascocho & Lynch APLC

Mario Martinez reports that his firm expended 67.2 hours on the action. (Doc. 83-5 at 4, Martinez Decl. ¶ 9; *see also* Doc. 83-6) The Court finds the time expended by the law firm—for tasks including meetings with Plaintiffs and potential class members, drafting the complaint, and discovery—appears reasonable. (*See generally* Doc. 83-6) Accordingly, no deductions for the hours expended by counsel and staff from Martinez Aguilascocho & Lynch APLC are made to the lodestar calculation.

**C. Lodestar calculation**

A fees lodestar is calculated by "by multiplying the number of hours reasonably expended by

counsel on the particular matter times a reasonable hourly rate." *Florida* , 915 F.2d at 545 n. 3 (citing *Hensley*, 461 U.S. at 433); *see also Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 489 (2016). With the time and hourly rate adjustments set forth above, the lodestar in this action is calculated as follows**:**

| LAW FIRM | LEGAL PROFESSIONAL | ADJUSTED HOURS | RATE | LODESTAR |
|---|---|---|---|---|
| **Mallison & Martinez ($35,075.00)** | Stan Mallison | 27.85 | $500 | $13,925.00 |
| | Joseph Sutton | 70.4 | $275 | $19,360.00 |
| | Liliana Garcia | 3.5 | $200 | $700.00 |
| | Staci Schoff | 3 | $175 | $525.00 |
| | Natalia Ramirez Lee | 0.6 | $175 | $105.00 |
| | Rocio Espinoza | 0.2 | $100 | $20.00 |
| | Hazel Rodriguez | 4.4 | $100 | $440.00 |
| | | | | |
| **Martinez Aguilascocho & Lynch APLC ($21,242.50**) | Mario Martinez | 27.5 | $500 | $13,750.00 |
| | Edgar Aguilasocho | 10.5 | $275 | $2,887.50 |
| | Anna K. Walther | 6.2 | $275 | $1,705.00 |
| | Aida Sotelo | 1.0 | $150 | $150.00 |
| | Brenda Rizo | 22.0 | $125 | $2,750.00 |
| | | | | |
| **TOTAL** | | | | **$56,317.50** |

Significantly, there is a strong presumption that the lodestar is a reasonable fee. *Gonzalez*, 729 F.3d at 1202; *Camacho*, 523 F.3d at 978. Based upon the work completed by counsel and the non-attorney staff in this action, the Court finds the hours are reasonable, and recommends fees be granted in the modified amount of $**56,317.50**.

**D. Costs**

Reimbursement of taxable costs is governed by 28 U.S.C. § 1920 and Federal Rule of Civil Procedure 54, which provides that costs "should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). This "creates a presumption in favor of awarding costs to the prevailing party, but the district court may refuse to award costs within its discretion." *Champion Produce, Inc. v. Ruby Robinson Co., Inc.*, 342 F.3d 1016, 1022 (9th Cir. 2003). "[A] district court need not give affirmative reasons for awarding costs; instead, it need only find that the reasons for denying costs are not sufficiently persuasive to overcome the presumption in favor of an award." *Save Our Valley v. Sound Transit*, 335 F.3d 932, 945 (9th Cir. 2003). For example, costs may be declined in light of "a losing party's limited financial resources" or where there has been "misconduct by the prevailing party."

*Champion Produce*, 342 F.3d at 1022.

The Supreme Court explained that 28 U.S.C. § 1920 "defines the term 'costs' as used in Rule 54(d)." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987). Costs that may be taxed under 28 U.S.C. § 1920 include:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Generally, the court may not award costs under Rule 54(d) that are not authorized by statute or court rule. *Arlington Cent. School Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 301 (2006). Thus, "costs almost always amount to less than the successful litigant's total expenses in connection with a lawsuit." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012) (citing 10 Wright & Miller § 2666, at 203).

1. Filing and Service

Plaintiffs seek $400.00 for filing and $420.00 for three instances of service of process. (Doc. 83-2 at 14) Pursuant to Local Rule 292(f)(2), a party may recover "fees for service by a person other than the Marshal under Fed. R. Civ. P. 4 to the extent they do not exceed the amount allowable for the same service by the Marshal." Currently, the United States Marshal charges $8 per mailed item and $65 per hour for personal service. 20 C.F.R. § 0.114(a). Requests for costs that exceed these amounts may be reduced to align with the amount authorized by Section 0.114(a). *See Yeager v. Bowlin*, 2010 WL 716389 at *2 (E.D. Cal. Feb. 26, 2010).

Mallison & Martinez fail to indicate what service of process was required, or the method used in each instance. Accordingly, the Court is unable to find that the higher amount for personal service is appropriate, rather than the amount per mailed item, and recommends that the costs for filing and service of process be **GRANTED** in the modified amount of $424.00.

///

2. Expert analysis

Plaintiffs seek expert analysis costs in the amount of $2,850.00. (Doc 83-2 at 14) Under Section 1920, only compensation for "court appointed experts" and witness fees is permitted. *See* 28 U.S.C. § 1920. Because Plaintiffs' expert was not appointed by the Court, Plaintiffs are not entitled to recover the expert fees under Section 1920. Thus, the Court recommends the request for expert analysis costs be **DENIED**.

3. Mileage

Plaintiffs seeks costs for mileage by counsel, in the amount of $703.60 for the firm of Mallison & Martinez and $490.21 from the firm of Martinez Aguilasocho & Lynch (Doc. 83-2 at 15; Doc. 83-5 at 5; Doc. 83-6 at 7)

Pursuant to Local Rule 292(f)(8), mileage for *witnesses*, not attorneys, may be taxed as costs. Likewise, other courts have determined attorneys are not entitled to mileage under Section 1920. *See, e.g., Syngenta Seeds, Inc. v. Delta Cotton Co-op, Inc.*, 2007 WL 1106116 at *2 (E.D. Ark. Apr. 12, 2007) (declining "to award travel and mileage costs for his attorney as such costs are not found in § 1920"); *Horina v. City of Granite City*, 2007 WL 489212 at *2 (S.D. Ill. Feb. 9, 2007) ("mileage expenses of attorneys are not recoverable costs under 28 U.S.C. § 1920"). As a result, Plaintiffs are not entitled to mileage for their attorneys to travel to the depositions. *See Atain Specialty Ins. Co. v. Sierra Pacific Mgmt. Co.*, 2016 WL 7034887 at *2 (E.D. Cal. Dec. 2, 2016) (finding the plaintiffs were "not entitled to the … mileage fee for their attorney's travel"). Therefore, the Court recommends the request for mileage in the total amount of $1194.34 be **DENIED**.

4. Copying/PACER fees

Plaintiffs seek $24.20 in copying fees, which are also identified as "PACER fees" in the itemized list. (Doc. 83-5 at 5; Doc. 83-6 at 7) Because copying and PACER fees are not taxable as costs under Section 1920, the Court recommends these costs be **DENIED**.

5. CourtCall

Plaintiffs seek $90.00 in CourtCall fees. (Doc. 83-2 at 14) Previously, this Court determined the costs of CourtCall "are outside the scope of § 1920." *Graff v. City of Tehachapi*, 2016 U.S. Dist. LEXIS 126663, 2016 WL 4944005 at *5 (E.D. Cal. Sept. 16, 2016). Because telephonic appearances

are not authorized by Section 1920, the Court recommends the request for these costs be **DENIED**.

6. Total costs to be awarded

With the deductions set forth above, Plaintiffs are entitled to $424.00 in costs under federal law, as provided under 28 U.S.C. §§ 1821 and 1920. Accordingly, the Court recommends Plaintiffs' request for costs be **GRANTED** in the modified amount of $424.00.

## VII. Findings and Recommendations

The *Eitel* factors weigh in favor of granting default judgment, and the entry of default judgment is within the discretion of the Court. *See Aldabe*, 616 F.2d at 1092. Based upon the foregoing, the Court **RECOMMENDS**:

1. Plaintiffs' motion for default judgment be **GRANTED IN PART**, in the modified amount of $**86,655.97**, which includes:
    a. Damages in the amount of $**6,764.47** for failure to pay rest break premiums;
    b. PAGA penalties in the modified amount of $**23,150.00**;
    c. Attorneys fees in the modified amount of $**56,317.50**;
    d. Costs in the amount of $**424.00**; and
2. Plaintiffs' request for damages and penalties for the derivative claims be **DENIED**.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen days of the date of service of these Findings and Recommendations, Plaintiffs may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991); *Wilkerson v. Wheeler*, 772 F.3d 834, 834 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **May 27, 2020**

**/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28