UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA GARYBO, et al., | No. 1:15-cv-01487-DAD-JLT |
| Plaintiffs, | |
| v. | ORDER ADOPTING FINDINGS AND RECOMMENDATIONS IN PART |
| LEONARDO BROS, et al., | |
| Defendants. | (Doc. Nos. 83, 84) |

Plaintiffs Sandra Garybo and Agustin Vega, on behalf of themselves and all others similarly situated, were agricultural workers and proceed in this wage-and-hour class action suit against defendant Leonardo Bros. Plaintiffs' motion for default judgment (Doc. No. 83) was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

/////

/////

/////

/////

/////

/////

**BACKGROUND**

Plaintiffs filed their complaint initiating this action on September 30, 2015.[1] (Doc. No. 1.) According to plaintiffs, prior defendant Golden West Labor[2] and Leonardo Bros. were joint employers of plaintiffs and the class. (*Id.* at ¶ 19.) The complaint asserted the following causes of action: (1) violation of the Agricultural Workers Protection Act, 29 U.S.C. § 1801, *et seq.*; (2) failure to pay minimum wage under California Labor Code §§ 510, 1194, 1194.2, 1197 and Wage Orders 8, 13, 14; (3) failure to pay overtime wages under California Labor Code §§ 510, 1194, 1194.2, and Wage Orders 8, 13, 14; (4) failure to provide timely and complete rest periods or pay additional wages in lieu thereof under California Labor Code §§ 226.7, 512 and Wage Orders 8, 13, 14; (5) failure to timely pay wages due at resignation or termination under California Labor Code §§ 201, 202, 203; (6) knowing and intentional failure to comply with itemized employee wage statement provisions under California Labor Code §§ 226(B), 1174, 1175; (7) violation of Unfair Competition Law under California Business and Professions Code §§ 17200, *et seq.*; and (8) violation of the Private Attorneys General Act ("PAGA") under California Labor Code §§ 2698, *et seq.* (*Id.* at ¶¶ 44–113.)

Defendant Leonardo Bros. was served with the complaint but did not file an answer. (Doc. No. 59-1 at 1.) Accordingly, on March 28, 2016, plaintiffs requested entry of default

---

[1] This court's overwhelming caseload has been well publicized and the long-standing lack of judicial resources in this district long-ago reached crisis proportion. That situation, which has continued unabated for over twenty months now, has left the undersigned presiding over approximately 1,300 civil cases and criminal matters involving 735 defendants at last count. Unfortunately, that situation results in the court not being able to issue orders in submitted civil matters as quickly as the parties may desire. Of course, this situation is frustrating to the court, which fully realizes how frustrating it is to the parties and their counsel. However, the sad reality is that this order was issued quite expeditiously in comparison to most civil motions now pending before the undersigned. Counsel may wish to express their views regarding this state of affairs to those in the other branches of government who can remedy the situation.

[2] On February 16, 2018, plaintiffs and Golden West Labor notified the court that they had reached a settlement agreement. (Doc. No. 49.) On March 30, 2018, the parties stipulated to the dismissal of all causes of action brought against Golden West Labor. (Doc. No. 52.) In light of the parties' stipulated dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), on April 4, 2018, the assigned magistrate judge directed the Clerk of the Court to close this action as to Golden West Labor only. (Doc. No. 54.)

1  against defendant Leonardo Bros., which the Clerk of the Court entered on March 29, 2016.
2  (Doc. Nos. 21, 22.) On July 27, 2018, plaintiffs moved for default judgment against defendant
3  Leonardo Bros. for class-wide damages. (Doc. No. 56.) On August 9, 2018, however, the
4  assigned magistrate judge removed the hearing on plaintiffs' motion for default judgment from
5  calendar and directed plaintiffs to file a separate motion for class certification before seeking
6  default judgment on a class-wide basis against Leonardo Bros. (Doc. No. 58.) On August 30,
7  2018, plaintiffs filed a motion seeking class certification of an unpaid rest break class,
8  appointment of class representatives, and appointment of class counsel, which the undersigned
9  granted on May 31, 2019. (Doc. Nos. 59, 67.)

10  On June 28, 2019, plaintiffs filed a first application for default judgment against defendant
11  Leonardo Bros., seeking a total award of $2,576,214.05, as well as reasonable attorneys' fees and
12  costs. (Doc. No. 69.) On July 29, 2019, the assigned magistrate issued an order directing
13  plaintiffs to submit a memorandum of points and authority in support of their application as
14  required by Local Rule 230(b) and to address the factors identified by the Ninth Circuit in *Eitel v.*
15  *McCool*, 782 F.2d 1470 (9th Cir. 1986) as well as to file evidence supporting the requested
16  amounts of costs and attorneys' fees incurred. (Doc. No. 70.) After the granting of multiple
17  extensions of time, plaintiffs filed updated briefing on August 19, 2019. (Doc. Nos. 74, 75, 76.)
18  On March 2, 2020, the assigned magistrate judge issued findings and recommendations,
19  recommending that plaintiffs' motion for default judgment be denied without prejudice because
20  plaintiffs had failed to present proper evidence related to the calculation of their damages by
21  providing sums based on the number of violations per shift, instead of per workday as required by
22  California Labor Code § 226.7. (Doc. No. 79 at 15.) Plaintiffs then withdrew their application
23  for default judgment on March 4, 2020. (Doc. No. 80.)

24  After an additional extension of time was requested and granted, plaintiffs filed the
25  pending motion for default judgment against defendant Leonardo Bros. on April 20, 2020. (Doc.
26  No. 83.) On May 28, 2020, the assigned magistrate judge issued findings and recommendations,
27  recommending that plaintiffs' motion for default judgment be granted in part, in the modified
28  amount of $ 86,655.97. (Doc. No. 84.) Specifically, the findings and recommendations

1  recommended that plaintiffs be awarded:  (1) damages in the amount of $6,764.47 for failure to
2  pay rest break premiums; (2) PAGA penalties in the modified amount of $23,150.00; (3)
3  attorneys' fees in the modified amount of $56,317.50; and (4) costs in the amount of $424.00; but
4  that plaintiffs' request for damages and penalties for the derivative claims be denied due to the
5  recent ruling by the California Court of Appeal in *Naranjo v. Spectrum Security Services, Inc.*,
6  S258966.  (*Id*. at 28.)  The findings and recommendations were served on the parties and
7  contained notice that objections were due within fourteen (14) days.  (*Id*. at 28.)  On July 11,
8  2020, plaintiffs timely filed their objections.  (Doc. No. 85.)

9        Having reviewed the pending findings and recommendations and objections related to
10  plaintiffs' motion for default judgment filed on April 30, 2020, the court then directed plaintiffs to
11  file supplemental briefing addressing whether plaintiffs intended to seek a stay pending the
12  California Supreme Court's ruling in *Naranjo v. Spectrum Security Services, Inc*., S258966; and
13  whether plaintiffs were aware of any binding authority where piece-rate workers denied paid rest
14  breaks recovered derivative penalties under either California Labor Code §§ 203 or 226.  (Doc.
15  No. 86.)  Pursuant to the court's request, plaintiffs have provided supplemental responses stating
16  they did not intend to seek a stay pending the *Naranjo* decision as well as various authorities
17  which they asserted allowed for the recovery of derivative penalties.  (Doc. No. 87.)

18        In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C), this court has conducted a
19  *de novo* review of this case.  Having carefully reviewed the file, including plaintiffs' objections
20  and supplemental briefing, the court finds the concludes that the assigned magistrate judge's
21  recommendation to grant default judgment are supported by the record and proper analysis.
22  However, the court finds plaintiffs' objections and supplemental authority persuasive as to the
23  availability of derivative penalties for unpaid rest breaks and declines to adopt the findings and
24  recommendations addressing this and other narrow issues as outlined below.

25        **DISCUSSION**
26  **A.**    **Derivative Penalties for Piece-Rate Workers' Lost and/or Unpaid Rest Periods**
27        Plaintiffs argue that defendant violated the applicable Wage Order and California Labor
28  Code § 226.7 by failing to authorize and permit:  (1) at least two rest breaks for shifts greater than

4

1   six hours, and/or three rest breaks for shifts exceeding ten hours; (2) ten-minute rest breaks; (3)
2   timely rest breaks; (4) paid rest breaks and failing to pay additional rest break wages; and (5)
3   discouraging and preventing employees from taking rest breaks.  (Doc. Nos. 1 at 7, ¶¶ 23–24; 69;
4   83-1 at 7.)  Plaintiffs contend that defendant's failure to comply with these provisions constituted
5   violations of both minimum wage and rest-break laws.  (Doc. Nos. 83-1 at 7; 87.)  Due to
6   defendant's failure to comply with Labor Code § 226.7 and other provisions, plaintiffs sought
7   "one additional hour of pay at the employee's regular rate of compensation for each work day that
8   the meal or rest period is not provided."  Cal. Labor Code § 226.7(c).  As a result of the alleged
9   wage violations, plaintiffs additionally brought their so-called derivative claims on behalf of the
10  class for failure to pay wages due and failure to provide complete, timely, and accurate wage
11  statements which arise under California. Labor Code §§ 201, 202, 203, and 226.  (Doc. 83-1 at 6,
12  8–10).
13          The assigned magistrate judge issued findings and recommendations recommending that
14  plaintiffs not be awarded any damages or penalties associated with their derivative claims for the
15  failure to pay wages, accurate wage statements, underpaid wages, and waiting time based upon
16  the determination that § 226.7 violations entitle a plaintiff to *penalties*, not *wages* for which
17  derivative wage-related claims can arise.  (Doc. No. 84 at 10–11, 16.)  The pending findings and
18  recommendations relied on several California Court of Appeal decisions holding that a waiting
19  time claim could not be based upon the award of premiums under § 226.7 for missed rest breaks,
20  including a recent decision of the California Court of Appeal for the Second District, *Naranjo v.*
21  *Spectrum Security Services, Inc.*, S258966.  (*Id.* at 10–11) ("California's Second District Court of
22  Appeal recently determined a claim under Section 226.7 does not entitle an aggrieved employee
23  to pursue derivative penalties under Sections 203 and 226."); (citing *Ling v. P.F. Chang's China*
24  *Bistro, Inc.*, 245 Cal. App. 4th 1242, 1261 (2016) ("section 226.7 cannot support a section 203
25  penalty because section 203 . . . tethers the waiting time penalty to a separate action for wages"
26  and a claim for premium pay under section 226.7 was not an action for wages); *Maroot v.*
27  *Insulation Constr. & Supply*, F077556, 2019 WL 3725897 (Cal. App. 5th Aug. 7, 2019) ("waiting
28  time penalties… cannot be based on an award of premium pay under section 226.7").

However, the undersigned concludes that these cases are inapposite because they involved only hourly workers, not piece-rate workers. Piece-rate compensation involves a method of calculating compensation based on the type and number of tasks completed rather than by the number of hours worked. *See Gonzalez v. Downtown LA Motors, LP*, 215 Cal. App. 4th 36, 41 (2013) (describing how employer compensated automotive service technicians based on the number of hours that the company determined was appropriate to spend on that task, regardless of how long the technician actually spent to complete the task); *Bluford v. Safeway Stores, Inc.*, 216 Cal. App. 4th 864 (2013) (describing how employer compensated truck drivers based on miles driven and specific tasks performed). Thus, the hourly workers in *Naranjo* suing only for the failure to provide rest periods are not directly analogous to the piece-rate class in this action who are seeking to recover both for the failure to provide rest periods and for the nonpayment of wages for their rest periods. *Cf. Naranjo*, 40 Cal. App. 5th at 468.

Unlike workers paid hourly, "in a piece-rate system, authorized rest breaks 'must be separately compensated' and 'are considered hours worked.'" *Gomez v. J. Jacobo Farm Lab. Contractor, Inc.*, No. 1:15-cv-01489-AWI-BAM, 2020 WL 1911544, at *6 (E.D. Cal. Apr. 20, 2020) (citing *Bluford*, 216 Cal. App. 4th at 872); *see also Jackpot Harvesting Co., Inc. v. Superior Court*, 26 Cal. App. 5th 125, 133–34, 146 (2018) (describing how California Labor Code § 226.2 "mandates that piece-rate employees receive compensation for all rest/[nonproductive] time[3] that is 'separate from piece-rate compensation.'"); *Nisei Farmers League v. Lab. & Workforce Dev. Agency*, 30 Cal. App. 5th 997, 1005 (2019), *review denied* (Apr. 10, 2019) (citing *Vaquero v. Stoneledge Furniture, LLC*, 9 Cal. App. 5th 98, 110 (2017) ("All of the federal courts that have considered this issue of California law have reached a similar conclusion and have held employers must separately compensate employees paid by the

---

[3] "Other nonproductive time" is time in which the piece-rate workers are not engaged in production (and cannot earn their piece-rate wages) such as during rest breaks or meal periods. *Bluford*, 216 Cal. App. 4th at 871–72; Cal. Labor Code § 226.2 ( "time under the employer's control, exclusive of rest and recovery periods, that is not directly related to the activity being compensated on a piece-rate basis.")

6

piece for nonproductive work hours").[4]  "[A]n employer must compensate its piece-rate employees for nonproductive time at no less than the applicable minimum wage." *Jackpot Harvesting Co.,* 26 Cal. App. 5th at 146 (citing Cal. Labor Code § 226.2(a)(4)).

As plaintiffs correctly note in their objections, when piece-rate workers are denied their paid rest periods, those "employees must be provided two remedies:  1) payment of rest premiums, and 2) separate payment of the unpaid rest period wages that were not paid to them." (Doc. No. 85 at 2–3.)  Due to this, California courts have allowed for the recovery on derivative claims based on a failure to provide piece-rate workers with paid rest periods. *See, e.g.*, *Gonzalez*, 215 Cal. App. 4th at 45-55 (holding that a class of piece-rate workers was not only entitled separate hourly compensation for time spent waiting for repair work, but also derivative penalties under Labor Code § 203); *Cicairos v. Summit Logistics, Inc.*, 133 Cal. App. 4th 949, 956 (2005) (holding that the failure to pay wages to piece-rate workers is a basis for Labor Code § 226 liability); *Morgan v. United Retail Inc.*, 186 Cal. App. 4th 1136, 1144 (2010) (same); *Carrillo v. Schneider Logistics, Inc.*, 823 F. Supp. 2d 1040 (C.D. Cal. 2011) (same); (*see also* Doc. No. 87 at 8.)  The California Supreme Court has also expressly held that rest period premium pay constitutes "wages" and that the state appellate court erred in construing payments under § 226.7 as penalties. *Murphy v. Kenneth Cole Prods., Inc*., 40 Cal. 4th 1094, 1114 (2007) ("We hold that section 226.7's plain language, the administrative and legislative history, and the compensatory purpose of the remedy compel the conclusion that the "additional hour of pay" is a premium wage, not a penalty.").

In light of the binding and persuasive authority, the undersigned concludes that plaintiffs are entitled to penalties with respect to their derivative causes of action and will grant the request for those penalties related to the failure to pay wages, accurate wage statements, underpaid wages, and waiting time in the amounts listed below.

---

[4]  This is a relatively new requirement of California wage and hour law.  California enacted § 226.2 in January 2016 to codify the two watershed holdings of the California Court of Appeal—*Bluford* and *Gonzalez*—which "provid[ed] for separate payment for nonproductive work time and for rest periods when employees are compensated on a piece-rate basis . . .." *Nisei*, 30 Cal. App. 5th at 1004–06; *Fowler Packing Company, Inc. v. Lanier*, 844 F.3d 809, 812 (9th Cir. 2016).

In the pending motion for default judgment, plaintiffs sought derivative penalties in the following amounts, which the court hereby grants: (1) $125,095.97 for "waiting time penalties" (the failure to pay all wages owed timely after separation from employment) pursuant to Labor Code § 203 (Doc. No. 83-1 at 8–9, 16); and (2) $23,150.00 for defendant's failure to provide accurate wage statements pursuant to Labor Code § 226. (*Id.* at 9–10, 16).

Plaintiffs also sought civil penalties pursuant to PAGA—separate from the penalties imposed by §§ 226 and 203—in the following total amounts, which the court will also grant:

1. $46,300.00 pursuant to § 210 for failure to pay wages under §§ 201.3, 204, 204(b), 204.1, 204.2, 205, 205.5, and 1197.5;
2. $68,250.00 pursuant to § 226.3 for failure to issue accurate wage statements under § 226;
3. $125,095.97 pursuant to § 256 for the waiting time penalty for failing to provide a wage statement under the terms of § 203; and
4. $55,800.00 pursuant to § 1197.1 for failure to pay the minimum wage.

(*Id.* at 12.) These amounts are in addition to the $23,150.00 pursuant to § 558 for underpaid wages that the magistrate judge recommended be granted. (Doc. No. 84 at 16.) Under the PAGA statute, 75% of the total $318,595.97 in civil PAGA penalties, or $238,946.98, will go to the California Labor and Workforce Development Agency ("LWDA"), and 25%, or $79,648.99, will be allocated to class. Cal. Lab. Code § 2699(i).

**B.    Attorneys' Fees and Costs**

The findings and recommendations reduced the hourly rates sought by plaintiffs' counsel in part because the findings recommended using hourly rates of the Fresno Division, rather than the hourly rates of the U.S. District Court for the Eastern District of California in its entirety. Because plaintiffs did not object to the recommended award of attorneys' fees, the court will grant the recommended fee award as modified in the pending findings and recommendations; but

/////

/////

/////

the court does note that the U.S. District Court for the Eastern District of California is not split into "divisions" by Local Rule or otherwise.[5]  *See Freshko Produce Servs., Inc. v. Write on Mktg., Inc.*, No. 1:18-cv-01703-DAD-BAM, 2019 WL 5390563, at *2 n.1 (E.D. Cal. Oct. 22, 2019).

The court recognizes that judges in the Eastern District of California frequently distinguish between the Fresno and Sacramento communities in determining hourly rates.  The general rule for awarding attorneys' fee rates, however, is that "the rates of attorneys practicing in the ***forum district***" are used.  *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992) (emphasis added); *Freshko Produce Servs., Inc. v. Write on Mktg., Inc.*, No. 1:18-cv-01703-DAD-BAM, 2019 WL 5390563, at *2 n.1 (E.D. Cal. Oct. 22, 2019).  The ultimate task of the court is to discern the "prevailing market rates in the relevant community."  *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013) (quoting *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005)).  In the undersigned's view, district wide rates should guide the court's award of attorney's fees in cases originating in Fresno, particularly in specialized fields of litigation.  *See, e.g.*, *Gonzalez*, 729 F.3d at 1206 (noting the appropriate rate was "the market rate prevailing in the Central District of California"); *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (relying upon the Northern District of California as the relevant legal community); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (same); *Davis v. Mason Cty.*, 927 F.2d 1473, 1488 (9th Cir. 1991) (using the Western District of Washington as the relevant local community), *overruled on other grounds as recognized in Davis v. City & County of San Francisco*, 976 F.2d 1536, 1556 (9th Cir. 1992).

The court briefly turns to address the costs sought.  The pending findings and recommendations determined that the "reimbursement of taxable costs is governed by 28 U.S.C. § 1920 and Federal Rule of Civil Procedure 54 . . . ."  (Doc. No. 84 at 25.)  However, this analysis inadvertently overlooked the fact that the claims upon which plaintiffs and the class prevailed

---

[5] Rather, by Local Rule, the court shall be in continuous session at Sacramento and Fresno and for venue purposes, actions arising in certain counties are to be commenced in the District Court sitting in either Sacramento, Fresno, Bakersfield, Redding and Yosemite National Park.  Local Rule 120(a),(b) and (c).

also allow for the recovery of costs beyond the more limited categories allowed by those federal statutes. For instance, an employee who prevails on a PAGA claim is entitled to reasonable attorney's fees and costs. Cal. Lab. Code § 2699 (g).

The court has reviewed plaintiffs' counsel's requests for the costs and expenses advanced while prosecuting this litigation. Such awards "should be limited to typical out-of-pocket expenses that are charged to a fee-paying client and should be reasonable and necessary." *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007). These can include reimbursements for: "(1) meals, hotels, and transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing fees; (5) messenger and overnight delivery; (6) online legal research; (7) class action notices; (8) experts, consultants, and investigators; and (9) mediation fees." *Id*.

Here, class counsel requests reimbursement of costs and expenses in the amount of $4,975.71. (Doc. No. 83-1 at 16.) These are comprised of $400.00 for filing fees; $420.00 for three instances of service of process (Doc. No. 83-2 at 14); expert analysis costs in the amount of $2,850.00 (*id.* at 14); $703.60 for mileage by counsel (Doc. Nos. 83-2 at 15; 83-5 at 5; 83-6 at 7); $24.20 in copying fees (Doc. Nos. 83-5 at 5; 83-6 at 7); and $90.00 in CourtCall fees (Doc. No. 83-2 at 14). The court has reviewed class counsel's declarations and finds all the charges incurred to be reasonable.

Accordingly, the court will approve the reimbursement of costs and expenses in the full amount requested by plaintiffs.

## CONCLUSION

For the reasons above,

1. The findings and recommendations issued August 30, 2018 (Doc. No. 84) are adopted in part as outlined herein;
2. Plaintiff's motion for default judgment (Doc. No. 53) is granted in part as follows:
   a. Plaintiffs and the class are awarded the total amount of $234,659.43, which represents the following sums:
      i. Damages in the amount of $6,764.47 for failure to pay rest break premiums as required under Labor Code § 226.7(c) and for applied

interest pursuant to Labor Code § 218.6;

  ii. $125,095.97 for "waiting time penalties" (the failure to pay all wages owed timely after separation from employment) brought pursuant to Labor Code § 203; and

  iii. $23,150.00 for their claims based on defendant's failure to provide accurate wage statements brought pursuant to Labor Code Section 226; and

  iv. Civil penalties pursuant to PAGA in the total amount of $318,595.97, of which 25%, or $79,648.99, will be allocated to class;

 b. The remaining 75%, or $238,946.98, of the civil penalties recovered pursuant to PAGA will go to the California Labor and Workforce Development Agency;

3. Class counsel shall receive $56,317.50 in attorneys' fees and $4,975.71 in costs;

4. Defendant Leonard Bros. is found and declared to be in violation of the statutes of the California Labor Code as outlined herein;

5. The Clerk of the Court is directed to enter judgment in favor of plaintiffs and the class;

6. Plaintiffs are directed to mail a copy of this order to defendant Leonardo Bros. at defendant's last known address;

7. To the extent plaintiffs wish to receive a default judgment order in a particular format, plaintiffs are directed to do one of the following within twenty-one (21) days of this order: (1) file a proposed order containing only and all of the above-approved terms in a document that the undersigned may sign as well as email it in Microsoft Word to dadorders@caed.uscourts.gov; or (2) file a notice with the court that this action may be closed; and

8. Should plaintiffs fail to file either document within twenty-one (21) days of this order, this action may be closed without further notice.

IT IS SO ORDERED.

 Dated: __**September 30, 2021**__       _/s/ Dale A. Drozd_
                      UNITED STATES DISTRICT JUDGE